## MORRIS v. HARVEY.

1. Where a father conveys all his estate to his son, under circumstances which possibly might lead to the conclusion that a trust was intended for the grantor, but the transaction is free from fraud, the deed cannot be avoided or personal property conveyed by it recovered, in a court of law.

2. If the conveyance under such circumstances express a consideration which was never paid, or if the same was in fact paid, these circumstances will not, as between the parties avoid the deed.

WRIT of Error to the Circuit Court of Talladega county.

Detinue for a slave. The cause was determined on a demurrer to the evidence and upon the general issue.

The evidence is stated at large, but may be condensed into the following facts:

Charles Harvey, the plaintiff in the present action on the 26th December, 1840, was in custody of one Jeter, on a peace warrant, issued by a Justice of the Peace, at the suit of his wife. Jeter was specially deputized to make the arrest, and two of his sons had married daughters of Harvey. When before the Justice of the Peace, Harvey offered his son Thomas as his surety, but the Justice refused to take him, alledging he was not responsible in point of property. The elder Harvey then said he would make him able, and calling on a witness declared in the presence of those then thère, as well as in the presence of his son, that he gave his son every thing he had. The Justice continued his refusal, and another person then present was called upon by the elder Harvey, but this person declined to be his surety, alledging as a reason that he had seen the wife of Harvey, who bore the marks of much violence.

On Sunday the 27th December, both of the Harveys came to the house of one Hagerty, and informed him they had been there the day before, to procure him to be the elder Harvey's surety on the peace warrant—that the elder Harvey had broken from Jeter's custody, and they wished Hagerty to draw up some instrument of writing conveying the real and personal estate of the elder to the younger Harvey, the former saying he intended going to Georgia, and did not wish his other children to have any of his property, or to scatter it.

Two deeds were then drawn, though one of them was possibly dated as of another day, by agreement of both parties; one of these deeds was for land, on which the elder Harvey resided, worth two or three dollars per acres; the other, produced in evidence at the request of the plaintiff, was a release or quit claim, dated the 27th December, 1840, executed by the elder to the younger Harvey, for the slave sued for and nine others. The consideration named in the deed is twelve hundred dollars, acknowledged to be paid, or secured to be paid, by the releasee to the releasor. No money was paid by the younger to the elder Harvey, but it was understood the former was to pay the debts due from the latter. These debts were believed not to exceed twenty-five dollars, and there was no proof that the younger Harvey had paid any of them. The slaves men-

tioned in the release, at its execution, were worth thirty-eight hundred dollars.

The elder Harvey, after the execution of the deeds, started for Georgia, but returned about three weeks afterwards, and was then seen in custody of the officer, who appeared to be carrying him to the jail of Montgomery county.

A short time, perhaps a week, before the deeds were thus executed, the younger Harvey called on Hagerty, to ascertain if he would take Harvey's mother, and let her reside with him. Hagerty refused, and she was afterwards in the family of one of the Jeters, her son-in-law. The younger Harvey had said he had loaned to this Jeter some of the slaves mentioned in the deed of release, alledging as his reason for the loan, that he regarded it but right that the other children should share a part of the benefit of the property. He had also said that he had received a proposition through Hagerty, from his father, to compromise—this proposition was, for the younger Harvey to keep the slaves, and that the elder should have the land. The younger Harvey had inquired of one Taylor whether a deed made on Sunday and without consideration would stand in law, saying this had been urged upon him as reasons for a compromise. The compromise was refused by the younger Harvey, and his only object in stating the matter seemed to be, a wish to ascertain Taylor's opinion upon the validity of the deeds.

The elder Harvey is a man of ordinary shrewdness, but scarcely so shrewd as his son; he was between fifty and sixty years of age at the execution of the deeds, and can neither read nor write. The younger Harvey is a married man, and at the time of the transaction lived about a quarter of a mile from the then residence of his father; it was not known to any of the witnesses that he had offered to take his mother to his house; his father is apparently without property, living with some person in the neighborhood of his son, and is working for his subsistence.

The slaves were not present when the deed of release was executed, nor were they then delivered, nor at any other time within the knowledge of the subscribing witness.

The slave in controversy having been taken into possession by the younger Harvey, was carried from Montgomery to

Talladega county and hired to the defendant. The value of the slave and of his services, as well as the defendant's refusal to deliver him to the plaintiff was in evidence.

To this evidence the defendant demurred, and the plaintiff joined; thereupon judgment was given for the plaintiff, which the defendant now seeks to reverse.

CHILTON, for the plaintiff in error, insisted that the elder Harvey was estopped from disputing either the deed or its consideration. [16 John. 116; Powell v. Monson, 3 Mason, 347: Jackson v. Ball, 1 John. cases, 90; Oakley v. Bœrman, 21 Wend. 585; 8 Cowen, 406.]

No fraud is shown—no means of deception resorted to—the deed was made understandingly, and whether with or without consideration is valid as between the parties to this action.— Jackson v. King, 4 Cowen, 207; 4 Wend. 474.]

It cannot be pretended there was a want of capacity in the elder Harvey to make the deed. To make such a defence at law the loss of understanding must be entire. [4 Cowen, 209.] Nor does the circumstance that he is unable to read or write vitiate the deed, unless imposition could be presumed. [2 John. 404.]

The execution of the deed on the Sabbath day does not render it void. [Thompson v. Cerner, 9 Cowen, 255.]

RICE, contra, insisted that a jury would have been authorized to infer fraud, or at least undue influence, from the circumstances in evidence, and either will avoid the deed as between the parties. [3 Cowen, 537, 571.]

The consideration is falsely stated, for it is clear that no money was paid, or secured to be paid. This is a fraud on the elder Harvey.

In a case of fraud the party is not compelled to go into equity to rescind the conveyance, but may sue at law. [Alexander v. Dennis, 9 Porter, 174; Swift v. Fitzhugh, 9 Porter, 40; Mobile Cotton Press v. Magee, ib. 679; Hinds v. Longworth, 11 Wheat.; Blocker v. Burruss, 2 Ala. Rep. 354.]

A deed of bargain and sale without a consideration is void, [Church. Digest, 322,] and the deed in this case cannot be considered in a more favorable view.

GOLDTHWAITE, J.—The right of the defendant to demur to the evidence does not appear to have been contested in the Court below; if the plaintiff in this case had refused to join in the demurrer, it may admit of doubt whether a joinder ought to have been compelled, inasmuch as the evidence offered to impeach the deed for fraud is entirely parol, and also loose, indefinite and wholly circumstantial. We mention it at this time for the purpose of indicating that it has never been held by this Court, that every case may be withdrawn from the jury, and the facts referred to the Court by a demurrer to evidence.

The defendant below insists here, that nothing whatever was shown in evidence which can rightfully impair the title of the younger Harvey to the slave in controversy; and the plaintiff contends that the deed is void for fraud in its execution; or if it was not fraudulent that it has no adequate consideration to support it.

We have carefully examined the evidence again and again, for any fact or circumstance from which fraud might legally be inferred, but can find none. It is true the plaintiff is shown to be an illiterate old man, who can neither read nor write; but it is certain that the deed was drawn at his own request, and that it fully conforms to his wishes, as expressed previous to its execution. If the deed was not read to him it cannot be doubted from what the subscribing witness relates, that he was fully acquainted with its contents, and intended it to prevent his other children from getting any of his property, or from scattering it. Conceding that it is possible the deeds were made with no intention to invest the son with the absolute property either in the land or slaves, but were intended to invest the son with the mere legal title for the purpose of keeping the property together and protecting it during the absence of the father, if a trust was thus created in favor of the elder Harvey, it cannot be enforced at law, nor will the trust operate as a destruction of the deed. We do not understand the defendant in error as insisting that the trust could be used to defeat the deed, but that it is a strong evidence of fraud that this trust was not declared on the face of the instrument itself. In answer to this it need only be said that if the conversation which is shown to have taken place between the parties and the witness who

drew the deeds, evinces that a *trust*, and not an absolute sale, was intended; yet also shows the elder Harvey intended to convey the title of his property to his son, and the deed is effectual for that purpose. Whether this conveyance was, as between the parties, intended to be governed, limited or otherwise controlled by a trust, is one of the proper functions of a Court of Equity to inquire. We think there is nothing in the case to warrant the inference of fraud in the execution of the deed, and therefore it cannot be impeached, however inconsistent the acts of the grantee may have been to the trust, if any existed. [Swift v. Fitzhugh, 9 Porter, 39; Taylor v. King, 6 Mun. 366; Watt v. Grove, 2 Sch. & Lef. 501; English v. Lane, 1 Porter, 328.] The other question, as to the inadequacy or want of consideration is more clear, as the current of decision is uniform to show that this is not the subject of inquiry at law. [Powell v. Monson, 3 Mason, 347; Jackson v. Bell, 1 John. cases, 90; Oakley v. Mœrman, 21 Wend. 585; McCutchen v. McCutchen, 9 Porter, 650.]

Our conclusion is that the judgment on the demurrer to the evidence is erroneous; it is therefore reversed and the cause remanded.