# Williams *v.* Higgins.

*Statutory Action in the Nature of Ejectment.*

1. *Delivery of deed can not be qualified by parol.*—When the possession of a deed to lands is obtained by the grantee from, and by the act of the grantor, or with his consent, it is not permissible for the grantor to prove by parol that the delivery of the deed was conditional or qualified, and not absolute. Any parol negotiation or agreement antecedent to, or contemporaneous with the delivery of the deed, is merged in the delivery, and from that time the conveyance becomes operative according to its terms.

2. *Deed; when want or inadequacy of consideration can not be shown.* Where a deed purports to be founded on a pecuniary consideration, it is not competent for the grantor, in the absence of fraud in its execution,

to show in a court of law the want, or inadequacy of the consideration expressed in the deed.

3. *Same; deed fraudulent as to creditors, operative inter partes.*—Conveyances or gifts made to hinder, delay or defraud creditors, when fully consummated, are valid and operative between the parties; and neither party can set up the fraud for the purpose of maintaining, or defeating an action brought by the one against the other.

4. *Adverse possession; when fraudulent deed will not support a plea of.*—Hostility to the title of the true owner is an essential element of adverse possession, and a possession can not be adverse, which in any contingency is intended to be in subservience and subordinaton to the true title.

5. *Same.*—Although the grantor in a deed made to hinder, delay or defraud his creditors, remained in the actual and continuous possession of the lands conveyed, taking the rents and profits; yet, such possession not being hostile to the title of the grantee, but being intended to be in subordination to it, if the grantor's creditors should seek to reach and subject the lands, it can not be adverse.


APPEAL from Pike Circuit Court.

Tried before Hon. H. D. CLAYTON.

This was a statutory real action in the nature of ejectment brought by R. J. Higgins, " as the receiver of the assets of S. A. & D. Williams," the appellee, against Z. H. Williams, the appellant, and was commenced on 13th September, 1879. The appellant, defendant in the Circuit Court, pleaded not guilty, and also suggested adverse possession for more than three years and the erection of valuable improvements on the premises. On the trial the appellee, plaintiff in the lower court, read in evidence a deed executed by the defendant and wife on 26th October, 1876, conveying to S. A. & D. Williams the lands sued for; and also a deed of assignment executed by S. A. & D. Williams to Thomas H. Beauchamp, as trustee for the benefit of their creditors, on 3d February, 1879, conveying, among other things, all their real estate; and also a deed executed by Beauchamp on 7th February, 1879, under the provisions of the deed of assignment, substituting the plaintiff as trustee in his stead, and conveying to the plaintiff the title obtained by him under the deed of assignment. The plaintiff then proved his appointment as receiver by the Chancery Court, on a bill filed therein for the purpose of carrying out, and executing the trusts created by the deed of assignment. The defendant was then examined as a witness in his own behalf, and testified, that " he had been in the actual possession of the land sued for six years, and was still in the actual possession thereof; that he had not quit the possession since he first went on the premises; that during the whole of said time he claimed the land as his own and exercised openly acts of ownership over it; that he rented a portion of the premises out, and received rents therefor, and that he still claimed the lands as his own. He further testified, that in the year 1876, he made the deed offered in ev-

[Williams v. Higgins.]

idence by the plaintiff, and carried it to Troy, and handed it to S. A. Williams folded up, and told him, there was a paper which he wanted him to place in his safe and keep it until he, defendant, should call for it, but that the paper was not for record. He further testified, that neither S. A. Williams nor D. Williams knew that he was going to make the deed; that he had no conversation with either of them in regard to it, and that neither of them knew the contents of the paper, when it was handed to S. A. Williams to put in his safe. That there was no consideration for the said deed, and that neither S. A. Williams nor D. Williams had ever paid or promised him any thing for said deed, or the lands thereby conveyed, and that they had no contract or agreement about it whatever. He further testified, that at the time he made the deed, one of his creditors was pressing him and he made the deed to his brothers, S. A. & D. Williams, in order that they could claim the land, if it became necessary to keep his creditors from oppressing him; that a few days after he had placed the deed in the hands of his brother for safe-keeping, he had a conversation with S. A. Williams and told him of the object of the deed, and requested him and D. Williams to hold it until witness called for it, and that he expected his brothers to claim the land, if it became necessary to keep his creditors from oppressing him, and such was his intention in making said deed and delivering it to S. A. Williams; that to this his brother assented; and that he only had, including the lands sued for, one hundred and sixty acres. He further testified, that neither S. A. Williams, nor D. Williams ever laid any claim to the land described in the deed; that he never paid them any rent, nor did they in any manner interfere with his possession, and that they both knew that he was claiming the land openly and notoriously as his own, exercising acts of ownership over the lands; and that he had made valuable improvements on the same."

Thomas H. Beauchamp was also examined as a witness on behalf of the defendant, who testified, that he was the book-keeper of S. A. & D. Williams, and that "he found the deed in their safe and without any instructions from any one, he took the deed to the office of the judge of probate and had it recorded, and that he was afterwards notified that the paper was not intended for record by his employers." The defendant's testimony was also corroborated by S. A. Williams and D. Williams, who were also examined as witnesses in his behalf.

This being all the evidence the defendant asked the court in writing to give the following, among other charges, to-wit: (1). "If the jury believe the evidence, they must find for the defendant." (2). "If the jury believe from the evidence, that the deed in evidence from the defendant to S. A. & D. Williams

is without consideration, they must find for the defendant. (3). "If the jury believe from the evidence, that after the defendant and his wife had signed the deed in evidence, the defendant handed the same to S. A. Williams and told him to take and put it in his safe and keep it until he called for it, and that it was not a paper for record, that was not such delivery as the law recognizes as sufficient to pass the title, and they must find for the defendant." (4). "If the jury believe from the evidence, that the deed in evidence was made by the defendant with the intent to keep his creditors from selling it, and S. A. & D. Williams, or either of them, accepted the deed with a knowledge of such intent, or they, or either of them, were subsequently informed of such intent, and still held and retained the deed, and they should further believe from the evidence, that the defendant continued in possession of the lands, and is still in possession of the same, they must find for the defendant." (5). "If the jury believe from the evidence, that the defendant was in possession of the land sued for, claiming it as his own, at the time S. A. & D. Williams made their assignment to Beauchamp, and at the time the plaintiff was substituted in his stead, then they must find for the defendant." (6). "If the jury believe from the evidence, that the deed in evidence was made and executed by the defendant to hinder and delay his creditors in the collection of their debt, and that S. A. & D. Williams, or either of them, were informed of such intent, and retained the deed afterwards, that was a participation in such fraudulent intent, and they could not recover the lands of the grantor, if he was in possession. The law, in such cases, leaves the parties where it finds them; and if the jury further believe from the evidence, that the plaintiff is the assignee of S. A. & D. Williams, they must find for the defendant." (7). "If the jury believe from the evidence, that the deed made to S. A. & D. Williams was without consideration, and that the defendant continued to live on the lands exercising acts of ownership, and asserting, openly and notoriously, ownership in himself, and that he made valuable improvements on the premises, rented the lands out and received the rents as his own. then the defendant held the lands adversely; and if they further believe from the evidence, that whilst the defendant was thus in possession, S. A. &. D. Williams made a general assignment of their property, and conveyed the lands in controversy to their assignee, that assignment does not confer such title upon the plaintiff as will entitle him to recover in this action, and they must find for the defendant." The court refused these charges, and the defendant separately excepted.

The plaintiff obtained a verdict, on which a judgment was rendered in his favor for the lands sued for, and from that judg-

[Williams v. Higgins.]

ment this appeal was taken. The rulings of the Circuit Court on the charges asked by the defendant, are here assigned as error.

GRIFFIN & WOOD, for appellant.—(1). There was no such delivery of the deed from the defendant to S. A. & D. Williams, as passed the title.—Greenleaf's Cruise on Real Property, Title 32, Deed, Chap. 2, §§ 62 and 64, and note to last section; Wait's Actions and Defenses, Vol. 2 (5th Ed.), § 297; *Fuller v. Hollis*, 57 Ala. 435. (2). If there was any delivery of the deed, it was contingent upon the necessity of defendant claiming the lands as against his creditors, and the record fails to show that any such contingency ever happened. (3). The general assignment having been made to pay pre-existing debts, and the defendant having continued in the actual possession, claiming the land as his own, the plaintiff can not claim to be a *bona fide* purchaser for value, and without notice of defendant's rights to the land. He, therefore, has no better claim than S. A. & D. Williams had.—*Burns v. Taylor*, 2'! Ala., 255; *Pylant v. Reeves*, 53 Ala. 132. (4). If there was a delivery, the deed was made and accepted for an *unlawful purpose, against the policy of the law*, and in violation of a highly criminal statute.—Code of 1876, § 4352. It follows that the maxim, *Ex turpi contractu actio non oritur*, applies.—*Clark v. Colbert*, at Dec Term, 1881; Greenleaf's Cruise on Real Property, Title 32, Deed, Chap. 2, § 43. (5). While the deed, when delivered, carried with it constructive possession, the defendant has always had the actual possession. Both parties are equal in guilt, and the plaintiff can not get the aid of the law to obtain possession. *In pari delicto melior est conditio possedentis.*—*Clark v. Colbert, supra; Kennett v. Chambers*, 14 How. 38; *Mitchell v. Smith*, 2 Amer. Dec. 417; *Seidenbender v. Charles*, 8 Amer. Dec. 682; *Wilson v. Spencer*, 10 Amer. Dec. 491; *Gray v. Roberts*, 12 Amer. Dec. 383. (6). The defendant held the lands adversely.—*Ladd v. Dubroca*, 61 Ala. 25. This being true, the right acquired by plaintiff was merely a *right to recover the land by suit.* This right S. A. & D. Williams could not grant.—*Pryor v. Butler*, 9 Ala. 418. The court, therefore, ought to have given the general charge in favor of defendant. *Bernstein v. Humes*, 60 Ala. 600; *Ladd v. Dubroca*, 61 Ala. 25; *Pryor v. Butler*, 9 Ala. 418; *Clay v. Wyatt*, 6 J. J. Marsh. 583; White & Tudor's Leading Cases, (4th Amer. Ed.) Vol. 2, Part 2, p. 1631.

JNO. D. GARDNER, *contra.*—(1). A fraudulent grantee may bring ejectment.—Bump on Fraud. Con. p. 456 and authorities cited. (2). A deed of land held adversely to the grantor

is good between the parties, upon the principle of estoppel, which operates upon the parties and their privies.—*Harvey v. Carlisle*, 23 Ala. 635. A court of justice will not give its sanction to a possession, which is held under a fraudulent arrangement. (3). To say that the deed was not delivered in this case, would be to say that a fraudulent deed is incapable of being delivered to a grantor who participates in the fraudulent design.—*Patton v. Beecher*, 62 Ala. 580.

BRICKELL, C. J.—1. When a deed is found in the possession of a grantee, the presumption arises that it was duly delivered to him. The presumption is disputable, and it may be countervailed by evidence, that he obtained the possession without the knowledge or consent of the grantor, surreptitiously, or illegally, the burden of proof resting on the party disputing the presumption. But when the possession is obtained from, and by the act of the grantor, or with his consent, without infringing salutary principles of the law of evidence, it is not permissible for him to show that the delivery was not absolute; that it was conditional or qualified. The deed of the appellant on its face is an absolute bargain and sale of the lands, with full covenants of warranty, purporting to be signed, sealed and delivered in the presence of subscribing witnesses. Voluntarily, by his own act, the grantor placed it in the possession and under the dominion of the grantees. The law declares its operation and effect, which can not be avoided by parol evidence showing the delivery was not absolute, that it was qualified, or conditional, without a violation of the cardinal rule, that the operation and effect of written instruments can not be varied or altered by evidence resting in parol.— *Ward v. Lewis*, 4 Pick. 518; *Lawton v. Sager*, 11 Barb. 349; *Fireman's Ins. Co. v. McMillan*, 29 Ala. 147–160. It is as incumbent on a grantor who would qualify the delivery of a deed to the grantee, to express the qualification in the deed, or in an accompanying writing, as it is to express in writing any qualification or limitation of the words of grant or covenant found in the deed. In legal contemplation, all parol negotiations or agreements, whatever they may have been, antecedent or cotemporaneous, existing at the time of the delivery of the deed, are merged in the delivery, and from that time it is an operative conveyance according to its terms. The delivery of course includes acceptance by the grantees, and neither party can be allowed by parol to qualify the legal effect of his own voluntary and intentional act. There was no error in the ruling of the Circuit Court in reference to the delivery of the deed made by the appellant conveying the lands in controversy to S. A. & D. Williams.

2. The deed purports to be founded on a pecuniary consid-

[Williams v. Higgins.]

eration, and in the absence of fraud in its execution, it is not. permissible for the grantor in a court of law to show the want, or inadequacy of the consideration expressed.—*Morris v. Harvey*, 4 Ala. 300.

3. Conveyances, or gifts, made to hinder, delay, or defraud creditors, are valid and operative between the parties, when fully consummated; neither party can rescind or defeat them. 2 Brick. Dig. 16, § 45. And it is not material whether the party is alleging the fraud as matter of defense, or as a ground of action, for, as was said by Lord MANSFIELD, 1 W. Black. 364, "no man shall set up his own iniquity as a *defense*, any more than as a cause of action." The plaintiff in the present action showed a legal title to the lands in controversy, entitling him to recover possession, by the exhibition of the paper titles, the first of which was the deed made by the appellant, and all fair on their face, not importing that any one of them was founded upon or connected with an illegal or immoral transaction. The defendant, to avoid his own conveyance, avers his fraud, his illegal and immoral conduct and purposes. He in fact becomes the actor, and seeks the assistance of the court to relieve him from the toils of his own invention. No court has as yet given such assistance. Truth and fair dealing are rules of universal obligation. If men in consummation of frauds, employ instruments, binding and conclusive in their legal operation and effect, it is sound reason, good policy, sheer justice, to leave them where they have placed themselves, bound as they have bound themselves, without assistance from the courts to unloose them, when it becomes their interest to be unloosed, encouraging them and others to commit similar frauds.

4. No question of adverse possession arises on the facts in the record. The grantor, it is true, remained in the actual and continuous possession of the lands, taking the rents and profits. But the possession was not hostile to the title of the grantees, or so intended. On the contrary, it was intended to be in subordination to their title, if the creditors of the grantor sought to reach and subject the lands. Hostility to the title of the true owner is an essential element of adverse possession, and a possession can not be adverse, which in any contingency is intended to be in subservience and subordination to the true title.

We find no error in the record, and the judgment is affirmed.