.MICHAEL WHELAN *et al.*, Appellants, v. HENRY
TOBENER, Respondent.

Kansas City Court of Appeals, May 17, 1897.

1. **Evidence:** DEEDS: PAROL TO VARY. A deed like other written con-
tracts will be presumed to contain the contract of the parties and in
the absence of fraud, accident, or mistake, it can not be contradicted,
varied, or altered by parol evidence and all prior or contemporaneous
matter will be held to be either rejected by the parties or merged
into the writing.

2. **Deeds:** ESCROW: DELIVERY: ACCEPTANCE. Where the grantee
accepts a deed as a present operative conveyance to secure money
advanced, it is not a delivery in escrow; and, if it is in fact a fee
simple conveyance, it conveys an indefeasible estate and it can not
be held a present operative conveyance if it is for money advanced,
or a conveyance in escrow if a fee simple conveyance.

3. ———: ———: ———: ———: ESTOPPEL. A grantee accepting
delivery of a deed can not be heard to say it was nonoperative; and
when it passes beyond the control of the grantor it is operative and
not in escrow.

4. ———: FEE SIMPLE AS MORTGAGE: WANT OF EVIDENCE. While per-
mitting a deed absolute on its face to be converted by parol evidence
into a security for money loaned is a lengthy step toward the inse-
curity of such documents, yet it may be done by evidence so cogent
and overwhelming as to leave no room as to reasonable doubt, espe-
cially in cases where at the inception of the transaction the grantor is
seeking a loan and obtains money from the grantee, but not where
circumstances indicate a sale and the grantee took the property with
a view of speculating therein.

*Appeal from the Jackson Circuit Court.*—HON. J. H.
SLOVER, Judge.

REVERSED AND REMANDED.

STATEMENT BY ELLISON, J.

The following facts were found by the trial court:
"Now on this day come the parties herein, by their
respective attorneys, and this cause being taken up and

submitted to the court upon the plaintiff's petition and
defendant's cross petition and bill and pleadings, the
court being fully advised in the premises, finds that,
for several years prior to 1887, the plaintiff owned in
fee the north half of lot 897, block 64, McGee's addi-
tion to Kansas City, Missouri, and during that time,
general and special taxes had been assessed against it
and other property, amounting in 1887 to about $1,300,
and that plaintiff was financially embarrassed to such
an extent that he was unable to pay them without sell-
ing some real estate; and after consultation with his
adult children, it was determined among them to sell
the said property for the purpose of paying said taxes;
and William Tobener, a brother of the defendant, act-
ing as agent for the defendant, agreed to buy the prop-
erty for his brother at the price of $2,205, a conveyance
to be made to the defendant not later than six months
from the date of the agreement to sell, which was in
the summer of 1887. At the time of this agreement of
sale the plaintiff and his children who resided with him
near the property supposed the legal title to the prop-
erty to be in the children, derived from their mother,
who was plaintiff's wife, and who died some time prior
to the sale; and the plaintiff and children said to the
defendant's agent, that they were unable to convey a
title to the defendant without a proceeding in court, as
they had been advised by their attorney, who said
it would require from three to six months in court for
that purpose; these facts were communicated to de-
fendant, by his agent, and the defendant agreed to give
them the required time to perfect their title. Pursuant
to this arrangement a suit in partition was afterward,
on September 23, 1887, brought by Mary Ann Whelan
against her adult sister and two infant brothers in the
circuit court of Jackson county, at Kansas City, return-
able to the October term thereof, 1887; a guardian *ad*

*litem* was appointed for the infant defendants, November 7, 1887, and on the second day of December, 1887, the guardian filed the usual answer for infants, denying the allegations of the petition and on June 19, 1890, a decree of partition was entered declaring the rights of the parties and ordering a sale of the property, which was made by the sheriff, July 17, 1890, and a sister of the attorney who brought the partition suit, and through him, bought the property for $200 cash, and on the twenty-first day of October the sheriff reported the sale, which was approved November 5, 1890, and on November 15, 1890, a sheriff's deed was duly executed to the purchaser and was recorded in the office of the recorder of deeds at Kansas City, October 30, 1891. The purchaser placed a deed of trust upon the property April 7, 1891, for $200, which is yet unpaid; from time to time, pending the partition proceeding, the defendant and his agent made inquiries of the Whelans as to the progress of the suit, and they informed him that their attorney had said the suit was being prosecuted and the title would soon be all right. In the meantime the defendant had paid the general and special taxes against the property to protect it against sale, and not having any security for the amount paid, he prevailed upon the plaintiff and three of his children to execute to him a deed to secure his advancement for the taxes, until the title to the property should be perfected by the proceedings brought by the Whelans, and for that purpose the plaintiff and his son, Michael A., and daughters, Mary and Catherine, executed a general warranty deed to the defendant, dated December 29, 1887,—and which was placed on record January 14, 1888. The Whelans continued in possession of the property, collecting the rents for some years after the sale to the defendant when a fire in 1891 rendered the house uninhabitable without repairs, and

the plaintiff and his children, being without the necessary means to repair the property, went to the defendant and told him to take the house, which he did; repaired and rented it, and has since then collected the rents thereof, keeping an account of the income of, and disbursements upon, the property without any knowledge of the sales and deeds in partition until recently.

"That the defendant bought the property on speculation at a time when real estate was very active on the market at Kansas City, and without any knowledge of the true condition of the title, and desiring to dispose of it at a profit as he had opportunities to do, repeatedly urged the Whelans to complete their title, to enable him to do so, and he was met with the response that their attorney had advised them that the case was in process of adjustment in the court and the matter thus drifted along until the real estate market declined, when all efforts to settle the matter by negotiation seemed to have slumbered until the commencement of the suit for a vendor's lien against the defendant. The evidence further showed that the defendant has collected rents of the property for which he should account. Upon the foregoing facts, the court finds against the plaintiff and finds for the defendant, and that the defendant is entitled to a return of the money advanced by him to pay taxes and other legal charges upon and against the property, and an accounting should be had between the parties to ascertain the amount due the defendant, in which the defendant should account for the rents received; that upon the payment by the plaintiff of the amount due the defendant the latter should convey the property to the plaintiff, and in default of such payment by the plaintiff, the amount due defendant should be charged upon the property, and

the property sold to pay such sum, together with the costs of this proceeding.

"Whereupon it is ordered, adjudged and decreed that John D. Parkinson be, and he is hereby appointed to take an account between the said parties to ascertain the amount due the defendant in accordance with the foregoing findings of fact herein, and that he make with reasonable diligence his report as to the amount so due the defendant by plaintiff, and that defendant have judgment against the plaintiff for the amount so found due defendant, and the court doth further order, adjudge, and decree that upon the payment of said judgment by the plaintiff, that defendant convey to the said plaintiff the said real estate, to wit: The north half of lot 897, in block 64, McGee's addition to the City of Kansas, now Kansas City, Jackson county, Missouri, and in default of such payment of said judgment, that the same shall be a lien upon said real estate, be sold to pay said judgment and the costs of this proceeding, and is further ordered that this cause be continued for further proceedings."

*R. B. Garnett* and *Frank Hagerman* for appellants.

(1) William Tobener, respondent's brother and his agent in making this purchase, was asked the question what the verbal arrangement was as to the purchase from appellants and permitted to answer, over the objection that it was not in writing, that it was agreed that the title should be perfected in from three to six months, and upon the strength of this the court below seemed to have carved out a condition in the sale so as to change the transaction from a sale to a mortgage. It must be borne in mind that an absolute warranty deed for the property was taken, dated December 29, 1887, and recorded by Tobener on January

14, 1888. Now, the law is perfectly plain that whenever an absolute deed is taken and delivered to the grantee that all prior contracts are merged therein and there can be no parol proof permitted that the delivery was upon any condition whatsoever. The deed must express everything as to the condition, and if no condition is placed therein, the ordinary rule, which applies to the merging of parol negotiations into a written instrument, applies. 1 Devlin on Deeds, secs. 314 and 316, and cases cited. For this error the case in any event must be reversed. (2) Upon the undisputed testimony, the decree of the court below was wrong, and there was not sufficient evidence to support the defense that appellants borrowed money and gave a deed as security. The undisputed testimony shows that this property was sold for $2,205 and that there were certain sums paid thereon, which will be hereinafter more particularly enumerated. A careful reading of the answer will show that there is practically no denial that this contract was as claimed. It is a conceded fact, not even denied by the answer, that the title was really in Michael Whelan, his testimony and the deed itself showing that he bought the property in 1859, and retained the title until December, 1887, when he made a warranty deed to Mr. Tobener. Michael Whelan testified explicitly that there was a straight sale and nothing was at any time ever said about borrowing money upon the property. Mary A. Whelan testified explicitly that it was a contract of sale, without conditions, and there was no agreement that money was to be loaned. William Tobener, the respondent's agent, admits the purchase, but undertook to testify that the whole purchase was upon the unwritten condition that the title should be perfected in six months; but, as we have seen, having accepted a warranty deed

without condition, all prior negotiations were merged therein.   1 Devlin on Deeds, secs. 314, 316.

 ˉRobert Adams for respondent.

(1)   The intention of the parties to the deed, and the real character of the transaction, were clearly shown by the testimony of witnesses for both the appellants and respondent, and parol evidence is admissible for that purpose.   Cobb v. Day, 106 Mo. 296;   Worley v. Dryden, 57 Mo. 226;   Turner v. Kerr, 44 Mo. 429;   Newel v. Kerlin, 13 Mo. App. 189;   Bender v. Markel, 37 Mo. App. 234;   King v. Greeves & Ruff, 42 Mo. App. 168;   Ten—— Co. v. Bank, 57 Mo. App. 19-25;   O'Neil v. Capelle, 62 Mo. 202.   (2)   The only authority cited by appellants is Devlin on Deeds, secs. 314 and 316, of chapter 13, which treats on "Delivery in Escrow."   We can not conceive  wherein this citation sustains the appellants' contention "that whenever an absolute deed is taken and delivered to the grantee, that all prior contracts are merged therein, and there can be no parol evidence permitted, that the delivery was upon any condition whatever."   Bowker v. Bendekin, 11 M. & W. 128.  And in Flagg v. Mann, 2 Sum. (U. S.) 486, Justice STORY says: "Though there is a technical difficulty in the suggestion of the delivery of the deed to the grantee as an escrow, yet a court of equity will not govern itself exclusively by technical principles of law where the intentions of the parties will be thereby defeated."

ELLISON, J.—Plaintiffs instituted this action to enforce a vendor's lien on the real estate described in their petition.   Defendant filed an answer in which he admitted a conveyance to him from plaintiffs by warranty deed of the property described for the considera-

tion of $2,205. But defendant further alleged that
though he purchased the property for that sum it was
"incumbered by a large amount of tax liens both gen-
eral and special and he applied to plaintiffs through
his brother, William Tobener, for money with which
to extinguish said liens. That it was thereupon agreed
that a deed should be executed by the plaintiffs to
secure the defendant for the money necessary for the
purpose aforesaid upon the consideration and agree-
ment by plaintiffs that a suit in partition to perfect the
title to said lot, which had been instituted, should be
prosecuted to a successful termination, and that there
was but one heir who was not of age and that the title
vested in said heir should be conveyed to the defend-
ant, so that a merchantable title to said lot in fee
should be vested in defendant within three months
from the date of said deed; that plaintiffs should
remain in possession thereof until the title was per-
fected, as aforesaid, in defendant, when, after defend-
ant would pay to the plaintiffs said sum of twenty-two
hundred and five ($2,205) dollars, less the advance
made and the interest thereon up to the time when a
perfect title should be conveyed to defendant within
the time stated aforesaid."

The answer further alleges that he made advances
on said property to extinguish said liens to the amount
of $1,375. That the warranty deed was made as secur-
ity for such advances and to secure the performance of
the agreement as to the perfecting of title within the
six months stated in the answer to be the limit of time.

There was an interlocutory judgment for defend-
ant and the cause was referred to a referee for an
adjustment of account between the parties. The
referee's adjustment resulted in a finding for defendant
in the sum of $1,529.83. This was reduced by the
court to the sum of $1,279.10, for which judgment was

entered against plaintiff Michael Whelan and defendant was ordered to convey the property to said Michael on his paying defendant the sum last mentioned. The full title to the property was in plaintiff Michael Whelan, though it seems to have been thought by all the parties at the time of the transaction that two infants had an interest in it. Defendant's position in the case is not made as clear and definite as we would like. He seems to concede that there was a sale at an agreed price. But that it being thought that the two infants had an apparent interest in the property, there was an agreement that the title should be perfected within from three to six months, and that as there were heavy tax liens against the property he was to, and did, take a general warranty deed to the property to secure himself for the advance made in discharging the taxes. He, however, testified when asked if the money paid by him in payment of the taxes was a loan that it was "not exactly a loan, I bought the property and advanced that EVIDENCE: deeds: much money on it." It is apparent from parol to vary. all this testimony that he purchased the property and that he made offers of selling it. The testimony in defendant's behalf leaves no doubt whatever of these facts. In our opinion it was error for the court to permit oral evidence *aliunde* the deed to show that there was an agreement or understanding that the title should be perfected. The deed, besides being the writing and presumed to contain the entire contract, itself contained the written stipulation as to title. It was a warranty deed whereby all defects of title, if any, were to be made good by the grantor. There ought not to be any question at this day, that a deed, like other written contracts will be presumed to contain the contract of the parties and that in the absence

VOL. 71 app—24

Whelan v. Tobener.

of fraud, accident or mistake it can not be contradicted, varied or altered by oral evidence and that all prior or contemporaneous matter will be held to be either rejected by the parties or merged in the writing. This rule is as frequently applied to deeds as to other written contracts. *Williams v. Higgins,* 69 Ala. 517.

From the contest in this case, at least as developed in the briefs presented, we take it that it is a part of defendant's contention that the deed delivered to him was in escrow, which must mean that it was not to be a deed unless the matters of agreement to be performed by plaintiffs were complied with; that is, the supposed defect in title perfected. The facts in the case as stated by defendant himself rebut the idea of the deed being a mere escrow. He states that he accepted it as a present operative conveyance securing him for money advanced on the taxes. An escrow takes effect upon a delivery after the conditions upon which it has been delivered have been complied with. The condition here, it is asserted, was perfecting the title. Yet it is contended that the deed was delivered to defendant to secure him for money advanced until the title was perfected. If the latter statement is true, the deed could not be an escrow since it took effect on delivery to the grantee as an operative conveyance.

*Deeds: escrow: delivery: acceptance.*

But aside from this defendant being the grantee named and having accepted of the delivery, can not be heard to say that it was not an operative conveyance. When a deed is delivered over to the grantee, the grantor having no further control or dominion over it, it becomes an operative deed and can not be an escrow. *Miller v. Fletcher,* 27 Grat. 403; *McCann v. Atherton,* 106 Ill. 31. These cases make plain the foregoing statement of the law. The former is an exhaustive

—: —: —: —: estoppel:

and interesting consideration of the subject. To be an escrow the deed must have been delivered to some stranger, by him to be delivered to the grantee upon the happening of the conditions. Bouvier's Law Dict.

We will now consider whether the deed was a mortgage, notwithstanding it was absolute on its face.

It must be conceded by all that to permit a deed conveying real estate with all the formality required of such an instrument including its comprehensive warranties and covenants to be shown by oral evidence to be a mere security for money loaned, is a lengthy step towards the insecurity of so important a document. Yet the law recognizes that it may be done. But while permitting it to be done, the law also recognizes the great danger which exists by so allowing it and demands that the evidence, whereby the deed absolute is made to contain a defeasance, must be of such cogent and overwhelming character as to leave no room for reasonable doubt. *Worley v. Dryden*, 57 Mo. 226; *King v. Greves*, 42 Mo. App. 168; *Bender v. Markle*, 37 Mo. App. 234.

It is true that if in a controversy of this nature it should fully develop that at the inception the grantor was seeking and. desiring a loan and obtains money from the grantee, the courts will incline willingly to the theory, that the deed, though absolute, was intended as a mortgage, unless it be made to appear clearly that the parties subsequently changed their minds. *Codd v. Day*, 106 Mo. 278. But no such pretense is made in this case. The evidence of defendant and of his brother, who acted as his agent, clearly showed the proposition from the start was a sale. Not only that, but defendant testifies he undertook to sell the property more than once and was prevented on

account of the supposed condition of the title. So that we have to conclude from the evidence in behalf of defendant that the transaction was a sale outright and not a loan of money. Entertaining the foregoing views we conclude the judgment below was for the wrong party. The plaintiff should recover.

An examination of the evidence discloses that this is no hardship on defendant since his testimony shows that he purchased with a view of what he could make out of the property. That in point of fact he had from the delivery of the deed to him the full title to the property and has now that title with the possession. He states that he could have sold at an advance at different times if the title had been perfected. The fact that he really had a perfect title should have become known to him in these years that he has had a deed to the property and occupied it. But whether it should or not the law as applied to the facts shown by the record is with the plaintiff and the judgment will be reversed with directions to enter judgment for the plaintiff for the balance due, and for the enforcement of the vendor's lien as prayed for. That balance we find to be $830.31 with interest made up as follows: Purchase price of property was $2,205, reduced by $1,064.69 paid thereon, leaving the sum of $1,140.31 as balance of purchase price. From that amount there should be deducted the sum of $310 rents of property collected by plaintiff after sale, leaving the balance aforesaid of $830.31. To this latter sum should be added interest at the rate of six per cent from date of sale to the time of entering the judgment. All concur.