RENDLEN et al., Appellants, v. EDWARDS et al., Respondents.

St. Louis Court of Appeals, January 30, 1906.

1. **DEEDS: Delivery: Escrow.** Deeds put into the possession of another than the grantee to be held until the happening of a contingency but not until the performance of some condition were not held in escrow by him.

2. ———: ———: **Intention.** A man and his wife conveyed to a third person his interest in his mother's real estate before her death and the third person—an attorney—on the following day conveyed the same land to the first grantor's wife and the two deeds were left with the attorney, who had no interest but was the mere conduit through which the title of the grantor passed to his wife, to be held by the attorney until the death of the mother and after her death they were recorded and given to the wife. *Held* the deeds were not delivered until after the death of the mother so that they were operative to pass the title and vest the same in the wife.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby*, Judge.

REVERSED AND REMANDED (*with directions*).

*Geo. A. Mahan, A. R. Smith* and *Chas. E. Rendlen* for appellants.

The sole question in this case is that of delivery of the quit-claim deed from Theodore Rendlen to Albert R. Smith and the quit-claim deed from Smith to Alice Rendlen. If such deeds were delivered before the death of Catharine Rendlen then the title did not pass to Alice Rendlen and Theodore had the title at the date of the levy. If the delivery of the deeds were not made until after Catharine's death then Alice Rendlen had the title and the injunction was properly granted. We think the evidence shows conclusively that the deeds were not

delivered until after the death of Catharine Rendlen. There is no evidence showing any intention to deliver the deeds, before the death of Catharine Rendlen. To have done so would have defeated the very purpose of their execution. Vaustone v. Goodwin, 42 Mo. App. 39; Huiser v. Beck, 55 Mo. App. 668; Ells v. Railroad, 40 Mo. App. 170; Hall v. Hall, 107 Mo. 101; Cravens v. Rossiter, 116 Mo. 343; Tyler v. Hall, 106 Mo. 321; Huey v. Huey, 65 Mo. 689; 2 Greenleaf Ev. sec. 297.

*Schofield & Plowman* and *F. L. Schofield* for respondent.

The question of the delivery of the quit-claim deeds lies at the very bottom of plaintiff's case. In the deed from Theodore Rendlen to Smith we have the undisputed evidence that this deed was actually handed to Smith by Rendlen on the date of its execution and before Mrs. Rendlen's death, and thereafter it remained in Smith's possession. Indeed if not delivered at that time, the evidence shows no other delivery by Rendlen. Was this deed an escrow? We respectfully submit that it was not. That there was not only no element of an escrow in this transaction, but that the parties to the deed and their privies, will not be heard to assert or contend that the deed was delivered as an escrow. Sheppard's Touchstone, 59; 11 Am. & Eng. Ency. Law, 333; 4 Kent Comm., sec. 454; 11 Am. & Eng. Encyc. Law, 337; Fletcher v. Sheppard, 174 Ill. 262, 51 N. E. 212; Wheelan v. Tobener, 71 Mo. App. 361; Henshaw v. Dutton, 59 Mo. 139, 67 Mo. 666; Jones v. Shaw, 67 Mo. 667; Massmann v. Holscher, 49 Mo. 87; Hurt v. Ford, 142 Mo. 299. There is not a particle of evidence that shows or tends to show that Theodore Rendlen retained any control, or direction over his deed to Smith after he had signed it and handed it to Smith, nor does it anywhere appear in any of the testimony that he reserved the right to recall this deed. Williams on Real Property. (17th. Inter.

Add.), p. 182; Ib. (American Notes), p. 189; Huey v. Huey, 65 Mo. 693; Sneathers v. Sneathers, 104 Mo. 201; Williams v. Latham, 113 Mo. 165; Stamford v. Stamford, 97 Mo. 231; Carter v. Mills, 30 Mo. 432; Fischer Leaf Co. v. Whipple, 51 Mo. App. 181.

BLAND, P. J.—Plaintiffs, William C. Rendlen, Albert E. Rendlen, Theodore G. Rendlen, Lydia M. Schanbacher, L. Aurora and Lillian T. Glenn and John A. Schnizlein, are the heirs at law of Catharine Rendlen, who died on January 2, 1902, seized in fee of a part of lot 4, block 13, in the city of Hannibal, State of Missouri, worth about thirty-five hundred dollars and described as follows: Beginning at the southeast corner of said lot four, thence north on west line of Main street, sixteen and four-twelfths feet; thence westerly parallel with the south line of said lot four, forty-two feet; thence southerly parallel with the west line of Main street, sixteen and four-twelfths feet to the south line of said lot four; thence easterly on the south line of said lot four. forty-two feet to the place of beginning. As to this parcel of real estate, Catharine Rendlen died intestate. Plaintiff Alice Rendlen, is the wife of Theodore G. Rendlen, who is the son of Catharine Rendlen and inherited an undivided one-fifth interest in the above described real estate. On July 26, 1900, Theodore Rendlen and his wife executed and acknowledged a deed conveying the interest of Theodore Rendlen in the above described real estate to Albert R. Smith, which deed contained general convenants of warranty. On the following day Smith executed and acknowledged a quit-claim deed conveying the same parcel of land to Alice Rendlen. Neither of these deeds was filed for record until about two weeks after the death of Catharine Rendlen. Alice Rendlen testified that they were not delivered to her until after they were recorded. At the September term, 1902, of the Hannibal Court of Common Pleas, defendant Willie Edwards obtained a judgment against John Herl and Theodore

Rendlen for the sum of $1,444.75. On April 2, 1904, an execution was issued on this judgment and delivered to defendant Bowen, sheriff of Marion county, who seized and levied upon all the right, title and interest of Theodore Rendlen in and to the aforesaid real estate and duly advertised the same for sale under the execution. To prevent the sale, plaintiffs procured a temporary injunction, from the Hannibal Court of Common Pleas, which on final hearing was made perpetual. On a motion for new trial, the court set aside its findings and judgment and granted defendants a new trial, from which order plaintiffs duly appealed.

It is admitted that John Herl has no interest in the land levied upon and it is conceded by both parties that if the deed from Theodore Rendlen and wife to Smith, and the deed from Smith to Alice Rendlen were delivered to her prior to the death of Catharine Rendlen, then the said Alice took nothing by said deeds; on the other hand it is conceded that if these deeds were not delivered to her until after the death of Catharine Rendlen, she took a good title, having paid a good and valid consideration for the land with money procured from her mother, and the injunction should be made perpetual. Therefore the case is to be decided on the facts and requires an examination of the evidence in respect to what was done and said by the parties to the deeds. It appears that Smith is an attorney at law and was attorney for Theodore Rendlen and wife at the time the deeds were executed. He did not purchase the land, paid nothing whatever for it, but was used as a mere conduit to pass the title from Theodore Rendlen to his wife Alice. Smith testified that the deed from Rendlen and wife to himself was made out and executed in his office; that he handed the deed to Mrs. Rendlen and she read it, and after it was acknowledged it was left in his office; that on the following day, at his office, he made a quit-claim deed from himself to Mrs. Rendlen; that she was not present when he made this deed and did not know that it was ex-

ecuted; that he kept both deeds in a private box in the safe in his office until he was notified by Theodore Rendlen of the death of his mother, when he had both deeds recorded and sent back to him and that he then sent them to Mrs. Alice Rendlen. Witness also testified that at the time the deeds were made it was not intended that they should be delivered; that the understanding was that he was to hold the deeds for Theodore Rendlen until after the death of his mother, and this was done and that the actual delivery of the deeds was made about two weeks after the death of Catharine Rendlen; that he was simply acting "as aid to the title;" that the condition of the transaction was gone over in a legal way and it was found that a delivery of the quit-claim deed before the death of Catharine Rendlen would not pass the title to Alice Rendlen, and that he so advised Theodore Rendlen and wife; that neither of the deeds were delivered to him but were simply left in his possession and kept by him until after Mrs. Catharine Rendlen's death; that the reason why Theodore Rendlen and wife adopted the procedure of making a deed to him and from him back to Mrs. Rendlen, was, as he understood it, that Theodore owed his brother and sister a thousand dollars and had no money; that his wife borrowed the money from her mother and let her husband have it and he gave her the only thing he had to secure her in case of his death.

Alice Rendlen testified that her husband owed his brother and sister a thousand dollars, which he was anxious to pay, but he had no money, and she got the thousand dollars from her mother; that the only property her husband had for security was his interest in his mother's lot and she bought his expectancy in it; that she did not know of his owing any other debts and thought the thousand dollars was all he owed; that the deeds were not delivered to her until about two weeks after Catharine Rendlen's death. On cross-examination witness testified as follows: "I was present when the deeds were

made out and I signed them. I guess I was present when the second deed was made out. I don't remember whether they were both made out together. I don't believe they were. I knew about the second deed. I must have been present when it was made out. I gave it to Mr. Smith to take care of for me. He took care of the deeds for us." She also testified that she knew her husband did not own the whole of the property but had only a one-fifth interest in it.

The evidence is clear that the deeds were not put in Smith's possession to be held until the performance of some condition, therefore, they were not held in escrow by him . [Whelan v. Tobener, 71 Mo. App. 370; 4 Kent, sec. 454.] Were they delivered to Alice Rendlen? Delivery, in legal phraseology, as said in Black v. Shreve, 13 N. J. Eq. 455, means "the final absolute transfer to the grantee of a complete legal instrument sealed by the grantor, covenantor, or obligor."

In Vanstone v. Goodwin, 42 Mo. App. 39, it was held : "The infallible test of delivery is the fact that the grantor has divested himself of all dominion over the conveyance, and when the depositary, though the agent of the grantee, holds the instrument subject to recall of the grantor, there is no such delivery as to render it efficacious as a conveyance." The same ruling is made in Huiser v. Beck, 55 Mo. App. 668. [See also Tyler v. Hall, 106 Mo. 1. c. 321-2, 17 S. W. 319.]

In Hammerslough v. Cheatham, 84 Mo. 13, it is said : "To constitute a delivery of a deed by placing it in the hands of a third person, it must be done with the intent on the part of the grantor that it shall take effect as his deed in favor of the grantee."

Whether or not there was a delivery of the deeds to Mrs. Alice Rendlen depends, we think, upon the intention of the parties. According to Smith's evidence, the quit-claim deed was made without the knowledge of Mrs. Alice Rendlen and never left his possession until after the death of Catharine Rendlen. He being the

grantor in the deed, could not deliver it to himself as the agent of the grantee. It is true that Alice Rendlen testified that the Smith deed was handed to her, that it was in her hands, that it was in her care before she left Smith's office and that she left it with Smith to keep. She did not testify to making more than one visit to Smith's office. She was there, as both she and Smith testified, on the occasion of the execution and acknowledgment of the deed to Smith and read this deed before she signed it. The deed from Smith as shown by the deed itself and Smith's testimony, was made at his office on the following day and there is nothing to show that Mrs. Alice Rendlen was present at that time, and we think it is quite probable that her mind was confused in respect to the deed she did read, sign and acknowledge and that when she said she was present and read the deed she had in mind the deed made by her husband and herself to Smith. At any rate, it is more probable that Smith's memory is clearer and more accurate in regard to the details in respect to the execution of the two deeds than is that of Mrs. Rendlen, and we think his version of the matter should be accepted as correct. But in whatever light the testimony is viewed, we think there is no doubt that it was understood by the parties at the time the deeds were executed that the quit-claim deed would not be effectual to pass title to Mrs. Alice Rendlen, if delivered before the death of Mrs. Catharine Rendlen, and it was thought advisable that some security should be given her for the money she was lending her husband and as a matter of precaution the deeds were executed, not to be delivered at the time, but to remain in the possession of Smith until such time as a delivery would effect a transfer of the title to the property to Alice Rendlen. They were not delivered, in fact, until such time had arrived, and we think the judgment of the trial court, making the injunction perpetual was the proper one to be rendered under the evidence. The order granting a new trial is reversed and the cause remanded with directions to the

trial court to overrule the motion for new trial and enter judgment making the temporary order of injunction perpetual. All concur.