# Lawrence *v.* Williams.

### *Ejectment.*

(Decided January 23, 1913. Rehearing denied February 14, 1913. 60 South. 889.)

1. *Fraudulent Conveyance; Purchaser from Trustee.*—Notwithstanding the legal title must prevail in ejectment, and that purely equitable defenses or equitable titles are not available in ejectment, yet, a court will not lend its aid to one proving his cause of action through his own fraud; hence a plaintiff in ejectment may not prevail by showing that the deed to defendant's grantor was in fact one to the plaintiff, and that, after its delivery to him, he, for the purpose of defrauding his creditors, had the grantor erase the name of the plaintiff as grantee and insert in place thereof the name of the grantor of the defendant.

2. *Same; Rightful Purchaser.*—Where a plaintiff had a deed changed after its delivery by having his name erased and inserting that of his son as the grantee and the deed was recorded as changed, a purchaser from the son is within the protection of section 4293, Code 1907.

3. *Vendor and Purchaser; Notice; Recorded Deed; Change of Grantee.*—Where a party has a deed to himself changed after delivery by erasing his name therefrom as grantee and inserting the name of his son as grantee, and the deed as changed is recorded with the change, a purchaser from the son is protected by section 3883, Code 1907.

APPEAL from Tuscaloosa County Court.

Heard before Hon. HENRY B. FOSTER.

Ejectment by J. J. Williams against W. W. Lawrence. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the agreed statement of fact: "It is agreed that J. J. Williams, plaintiff in this case, was the owner of the lands in question at the time of the issuance of an execution against him out of the Tuscaloosa county court, and that these lands were sold under the execution and were bought at execution sale by W. D. Seed, and that said execution sale was regular in all respects; the title to the lands passing to W. D. Seed. It is further agreed that W. D. Seed and wife, the grantee in the aforesaid deed, executed and delivered to J. J. Williams, plaintiff, a deed to the lands in suit, and that on the following morning, after the execution and delivery of said deed to said J. J. Williams, upon the suggestion of J. J. Williams, the plaintiff, said W. D. Seed erased from the deed the name of J. J. Williams as grantee, and substituted therefor the name of Chas. S. Williams; that J. J. Williams stated at the time that he was expecting further litigation which might result in a judgment against him for costs, and that he wanted the deed made to his son, Chas. S. Williams, in order that the lands could not be made liable for his debts. The original deed from said. W. D. Seed to J. J. Williams, as changed, is placed in the record, marked 'Exhibit A,' for the inspection of the court. This deed, with the name of the grantee changed from J. J. Williams to Chas. S. Williams, was filed for record on November 29, 1906, in the office of the judge of probate of Tuscaloosa county, Ala., recorded in Deed Book 57, p. 443. Chas. S. Williams went immediately into possession of the land and lived

thereon and assessed and paid taxes on the same up until the time that he sold and conveyed it by quitclaim deed to Wilbur Lawrence, the defendant in this suit, as is shown by the original deed attached hereto, for the inspection of the court, and marked 'Exhibit B,' and that thereupon the said Wilbur Lawrence went into possession of said land and has been in the continuous, actual possession of the same from that time up until the present time. It is further agreed for the purpose of this suit that the permanent improvements made by defendant on the land in question are equal in value to the rents claimed by plaintiff."

OLIVER, VERNER & RICE and H. L. SMITH, for appellant. The court erred in giving the affirmative charge for the plaintiff as the plaintiff by his own admissions has inseparably mixed his own fraud with his alleged cause of action.—*Clark v. Colbert,* 67 Ala. 92; *Black v. Oliver,* 1 Ala. 449; *Williams v. Higgins,* 69 Ala. 517; *Keel v. Larkin,* 83 Ala. 147; *Meyers v. Meinrath,* 3 Am. Rep. 368; *Treadwell v. Torbert,* 119 Ala. 279; 10 Cush. 45; 22 N. E. 71.

DANIEL COLLIER and R. H. WRIGHT, for appellee. The change of grantees being made after a delivery of the deed to the original grantee did not have the effect to divest the title out of the plaintiff, the original grantee.—*Gulf Red Cedar Co. v. O'Neal,* 131 Ala. 128. One who takes a quitclaim deed cannot be regarded as an innocent purchaser.—*Derrick v. Brown,* 66 Ala. 162; *Clemmons v. Cochran,* 114 Ala. 350; 100 Ala. 326; 80 Ala. 470; 56 Ala. 267. The doctrine of equitable estoppel is without application in a court of law.—*Vankirk v. Wing,* 133 Ala. 148. The legal titles only are in question.—*Standifer v. Snow,* 78 Ala. 93; *Kelly v. Hendricks,* 57 Ala. 193.

MAYFIELD, J.—This is a statutory action in the nature of ejectment, brought by the appellee against the appellant. The trial was had on an agreed statement of facts, which the reporter will set out.

The trial court gave the affirmative charge for plaintiff (appellee here) and refused a like charge to the defendant.

We are of the opinion that the trial court erred in so directing a verdict for the plaintiff. In so doing the trial court has unwittingly aided plaintiff in perpetrating a fraud upon his creditors, and the purchasers of this land.

Courts will never lend their aid to any person to take advantage of his own wrong. If by actual, positive, and confessed fraud (such as is admitted in the agreed statement of facts in this case) one ostensibly parts with the legal title to land, and in law and in fact parts with the possession of such land with the intention and for the express purpose of defrauding his creditors and subsequent purchasers of the land from the person whom he had so placed in possession as the ostensible owner, neither courts of law nor of equity will lend to him a listening ear or a helping hand to restore him to the possession of the land which he parted with for such fraudulent purposes.

The trial court evidently went upon the theory that the legal title was in Williams, and that in an action of ejectment that title must prevail, and that if the defendant was entitled to any relief it was in other actions or in other courts; that the defendant's defense, if any he had, was an equitable estoppel—which is not availing in this state as a defense to an action of ejectment which can be brought only in a court of law. If this was all there was in the case, the trial court would have been eminently correct. Nothing is better settled .

in this state than the proposition that purely equitable defenses or equitable titles are not availing in courts of law in actions of ejectment or in statutory actions in the nature thereof.

This principle, however, if involved in this case, was not all there was in it.

The burden of proof was on the plaintiff, and the proving of his title as against this defendant involved the proving of an actual, palpable, and intended fraud against the creditors of plaintiff and the purchasers of this land, to which latter class the defendant belongs.

Courts of law, in actions of ejectment, will not thus allow a plaintiff to stultify himself by proving his own actual and intended fraud to deprive innocent purchasers of their title or possession. The truth, in law and in fact, is that the plaintiff showed no title; for the reason that what he showed was such an actual and palpable fraud that it falls within the category of conveyances pronounced by the law absolutely void, whether tested in a court of law or of equity. The agreed statement of facts recites, in effect if not in terms, that the conveyance was made with the intent to defraud the plaintiff's creditors. This being true, it was absolutely void and would be so pronounced by a court of law or of equity, except as between the parties to it; and between them, for the reason that they will not be allowed in the courts to set up or prove their own perfidy.

The effect, in law, of the conveyance of Seed to the plaintiff in this case, is exactly what it would have been if there had been no interlineations or changes in the name of the grantee, and the plaintiff had then and there conveyed to his son with the express purpose of defrauding his creditors. If this had been done, no one would contend that plaintiff could recover in this

action. The question presented to the trial court and to this court is: Will the plaintiff be allowed to avoid the result, by having the grantor to change the name of the grantee after the deed is delivered, and then be permitted in a court of law to thus show his own fraud and cunning exercised to defraud the purchasers from the party whom the plaintiff has thus apparently, and so by record, clothed with a perfect legal title?

It is very true that if plaintiff were allowed to show his own fraud, as admitted in the agreed statement of facts, he could show that no title ever passed to his son, and, consequently, that none passed to the defendant by the conveyance of his son to defendant. But the trouble he encounters is that the courts will not allow him to thus show his own fraud to defeat what he has thus made to appear by record to be a good and perfect title in his son. The law, common and statutory, pronounces such transactions to be absolutely void, and allows the invalidity to be shown in courts of law or of equity.

It was long ago said by the judges and the legislators to all litigants: "You shall not stipulate for iniquity." "No polluted hand shall touch the pure fountain of justice." Whoever has parted with title or possession in order to perpetrate a fraud shall not have the help of a court to fetch it back again. No one can obtain the aid of a court of law or of equity to perfect his intended fraud. The law leaves all who participate in the guilt of an illegal and immoral transaction where it finds them. It will neither enforce fraudulent transactions while executory, nor rescind such when executed. All contracts which have for their purpose anything contrary to justice and against the general policy of the common law or contrary to the provisions of express statutes are void. It is for the public good

that courts thus refuse to aid a party in reaping the benefit and intended result of his own fraud.

The plaintiff in this case, in order to recover, must assert his own illegal and immoral conduct and purpose. He thus seeks the assistance of the court to relieve him from the toils of his own wrong. No court, whether of law or of equity, will give any such assistance. It has been repeatedly held by this court that "if men, in the consummation of frauds, employ instruments apparently binding and conclusive in their legal operation and effect, it is sound reason, good policy, and sheer justice to leave them where they have placed themselves, without assistance from the courts to unloose them when it becomes to their interest to be unloosed. To aid them in such transactions would encourage others to commit similar frauds."—*Clark v. Colbert,* 67 Ala. 92; *Williams v. Higgins,* 69 Ala. 517; *Treadwell v. Torbert,* 119 Ala. 279, 24 South. 54, 72 Am. St. Rep. 918.

The plaintiff, by the agreed statement of facts in this case, places himself clearly within the maxim, "Ex dolo malo non oritur actio."

Section 3383 of the Code of 1907, or sections 1005 and 1006 of the Code of 1896, would also defeat the plaintiff's right to recover in this case. It is admitted by the agreed statement of acts that no deed from Seed to the plaintiff was ever recorded, but that while the deed was really made to the plaintiff, before it was recorded the plaintiff's name as grantee was erased and that of his son inserted. This statute renders conveyances void as against purchasers of the property, judgment creditors, mortgages, etc., unless the conveyance is recorded in the mode and within the time prescribed therein.

No deed to the plaintiff was recorded, as the statute directs. No deed to him from Seed has ever been recorded, but, worse than that, he confesses that he had the grantor, Seed, to change the deed from one to him, to appear to be one to his son instead; so the instrument which was recorded was, on its face, a deed to his son, and not one to him. This palpable fraud cannot be made to answer as a recording of plaintiff's title. This recording, in any event, failed to give notice to purchasers or mortgagees of the land that it belonged to the plaintiff, but served the very purpose for which it was intended, which was to deceive purchasers (one of whom was this defendant) as well as the world at large, and make it appear that the land in question was that of the plaintiff's son, and therefore not subject to plaintiff's creditors against whom he had no rights; the title having been divested out of him by an execution sale. So this deed from Seed to the plaintiff, which was changed to appear as a deed to his son, and which, as so changed, was recorded, cannot be considered or treated as a compliance with the statute for the recording and registration of conveyances. Hence it was absolutely void as a conveyance to the plaintiff; and, without such conveyance from Seed to him, it is confessed that he had no right to recover.

The conveyance was also absolutely void, except as between the parties to it, for the reason that it was made in direct violation of section 4293 of the Code, in that it was intended to hinder, delay, and defraud creditors and purchasers; and this suit shows that it would have the effect to defraud a purchaser should the instrument be now declared to be valid.

It is true that this defendant is not a creditor of the plaintiff, but he is a purchaser of the property, and he

would have acquired the legal title to it but for the fraud of the plaintiff.

It is admitted that the record "title," if it spoke the truth, would place the legal title to the land in the defendant. This is attempted to be defeated by parol evidence that the name of the grantee was changed after delivery of the deed, and changed, with the consent and at the request of the plaintiff, and with the avowed purpose of defrauding his creditors, in violation of the common law of the state.

While there is no express intention to defraud purchasers, which would include the defendant in this case, yet the necessary result of changing the name of the grantee after delivery, and of recording the conveyance, with the purpose of deceiving plaintiff's creditors, and subsequent purchasers of the property from the person declared by the record to be the owner, would be to actually deceive; and for this reason both of the statutes above referred to operate to render such conveyances and transactions void as to both the creditors of the grantor and purchasers of the property. That is to say, purchasers of the property are within the protection of both statutes, and unquestionably the purchaser in this case was a bona fide purchaser, within the meaning of both statutes.

As was said by Stone, C. J., in *Smith v. Cockrell*, 66 Ala. 64, 82, construing section 4293 of the Code, which was section 2184 of the Code of 1876: "Fraud is cognizable at law as well as in equity, and vitiates all transactions into which it enters, no matter how solemn the form and execution." In that case it was held that a bill had no equity, which rested solely upon the ground of having such a conveyance in violation of the statute declared void. There can be no doubt that the plaintiff's action in this case rendered the conveyance

which he so mutilated absolutely void as against his creditors or against subsequent purchasers of the property who had purchased it in faith of the record which he caused to be made.

The accepted doctrine in this state is that conveyances made with actual intent to defraud creditors or purchasers are absolutely void, and may be shown to be such, in either a court of law or a court of equity, when necessary to prevent the perpetration of the intended fraud.

For this reason, it follows that the trial court erred in instructing the jury to find for the plaintiff, and also in refusing a like charge requested by the defendant.

Reversed and rendered.

DOWDELL, C. J., concurs in the conclusion. ANDERSON and DE GRAFFENRIED, JJ., concur in opinion and conclusion