BEATTY, Justice.
This case concerns a coterminous boundary line dispute. The disputed strip of land is roughly 400 feet long and varies in width up to approximately 12 feet. The trial court, after hearing evidence presented ore tenus, found that the plaintiffs, Lessie Roberts and Faye Roberts, had not met their burden of proving adverse possession of the disputed strip of land and entered a judgment quieting title in the defendant, A.E. Mitchell. The plaintiffs appealed. We reverse and remand.
Issues presented for review include whether the plaintiffs provided evidence to the trial court to establish that they had acquired title to the property in question through adverse possession. Secondly, if plaintiffs did acquire title, whether the defendant divested them of this title through his adverse possession of the disputed land following his purchase of the adjoining property.
It was stipulated by the parties that the plaintiffs’ claim of ownership to the property in dispute was solely an adverse possession claim. The plaintiffs do not have deed or record title to the property. Further, it was undisputed that the defendant does have record title to the property.
The plaintiffs introduced evidence at the trial that James Edward McCain, the father of Lessie Roberts, bought a parcel of land in or about 1917. Lessie Roberts also testified that soon after , her father acquired the property, he dug a ditch across the property to establish the northwest boundary line which joined the defendant’s south boundary. Further evidence established that this land was cultivated by Mr. McCain and by other family members until approximately 1944. Plaintiffs contend that a gravel driveway constructed by the defendant some years after he purchased the property covered the previous location of the ditch. The plaintiffs claim that their property, due to the open continuous use by the family, extends up to, but not including, what is now the gravel driveway.
The defendant, on the other hand, asserts that the boundary line is several feet south of the gravel driveway, on property claimed by the plaintiffs. Mitchell purchased a parcel of real property on March 8,1958, adjacent to the Robertses’ land. Mr. Mitchell later filed the deed which conveyed the property to him in the probate office. At the time Mr. Mitchell acquired the property, he discussed the location of the boundary *514 line with the previous owner, Mrs. Aby Marlar. According to Mrs. Marlar, the location of Mr. Mitchell’s property line was 10 to 12 feet south of the driveway.
The boundary line was not questioned until 1981 when the defendant, Mitchell, cut a tree on the disputed strip of land. Mr. Mitchell’s action prompted the plaintiffs to have the property surveyed. The surveyor determined the correct boundary line to be south of the gravel driveway in the location which the previous owner had indicated to Mr. Mitchell. This location also corresponded to the property description in Mr. Mitchell’s deed. Following the survey, the plaintiffs instituted this action to obtain the strip of land by adverse possession.
The first issue is whether plaintiffs proved adverse possession of the land. The rule of adverse possession in Alabama is that a coterminous landowner may acquire title by holding actual possession of a disputed strip under a claim of right openly and continuously for a period of ten years. Rutland v. Georgia Kraft Company, 387 So.2d 836, 837 (Ala.1980). Cultivation of land is a sufficient possessory act to meet the requirements of adverse possession. Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971). The evidence presented by the plaintiffs, which was not disputed by the defendant, showed that after the ditch was dug by Lessie Roberts’s father to establish the boundary line, the land was cultivated up to the ditch for a period of approximately 27 years.
Portions of Lessie Roberts’s testimony are set out below:
“Q. Back during the time that you were living on the property, do you recall where the boundaries were on the property?
“A. Yes, sure, I knowed when my daddy dug the ditch....
“Q. So you saw your daddy dig the ditch?
“A. Sure, I was there with him.
“Q. When was it — well, let’s figure it this way; how old are you at the present time?
“A. I am seventy-nine and I will be eighty next summer.
“Q. And you were how old when your daddy dug the ditch?
“A. I was fourteen.”
The following testimony by Naomi Burroughs, sister of Lessie Roberts, established the use of the property:
“Q. How long have you been familiar with the property?
“A. Sixty-five years.
“Q. Tell us what you remember about tending that land.
“A. We had potatoes on that land and we had peanuts on that land and I remember picking up the potatoes and picking up the peanuts.
“Q. I want you to tell me where on that land you all did that?
“A. On the land I am talking about is there by the house, where Faye and Lessie’s house is now and I can remember when we tended there, before that house was built there.
“Q. How far behind that house did you tend?
“A. Not far, because the ditch was there behind the house; we farmed up to the ditch and the ditch was behind the trees.
“Q. Back to the cultivation, you said, that your father and your family cultivated this property; I believe you testified that it was cultivated in there around where the house was; is that correct?
“A. It was cultivated there, yes; all my life it was cultivated.... ”
The testimony of George Lowell McCain, brother of Lessie Roberts, shows that the farming continued until at least 1944:
“Q. What was your activities, when we stopped you were discussing your farming, where did this farming take place on this particular property there?
*515 “A. From the edge of the yard, the Roberts’ yard, to the pines West of the house and then up the ditch, from the road to the ditch.
“Q. When you say you farmed it, what do you mean; what did you do out there on it?
“A. Plowed, planted it.
“Q. All right, if you are fifty-four now and you left there when you were sixteen, wouldn’t the year have been 1944 when you left?
“A. Yes, that is about right.”
The standard of proof was quoted in the trial court’s order:
‘“In an adverse possession case, the burden of proof rests upon the party who asserts it, ... to prove that the possession is actual, hostile, open, notorious, exclusive and continuous.... This is a heavy burden requiring substantial evidence. Every presumption is in favor of the holder of the legal title.... [Citations omitted.]’ Casey v. McIntosh, 361 So.2d 1040 (1978).”
The trial court applied the Casey standard to the plaintiffs’ adverse possession claim and found that they failed to meet their burden of proof, stating:
“The sporadic unclearly defined use of the property in question by the Plaintiffs, considered with the Defendant’s testimony, does not allow the court to find for the Plaintiffs. Their good faith belief that they owned to the gravel road is legally insufficient.”
Since the plaintiffs’ evidence of adverse possession prior to 1944 was uncontradicted, it is obvious that the trial court considered only the recent use of the land in reaching its conclusion. The trial court was not at liberty to wholly ignore the undisputed testimony of plaintiff’s witnesses. See Stinson v. Acme Propane Gas Go., 391 So.2d 659, 661 (1980). Once the plaintiffs proved title to the land by undisputed evidence of adverse possession, thereafter, mere sporadic use on their part would be insufficient to divest them of title to the property.
Under the facts established by the plaintiffs, the title to the disputed strip of property vested in the plaintiffs’ predecessors prior to the defendant’s purchase of his property in 1958. In Milstead v. Devine, 254 Ala. 442, 444, 48 So.2d 530 (1950), this Court stated:
“The exclusive possession of the lands by the plaintiffs and their predecessors in title for the prescriptive period is regarded in law as having vested a perfect title and equivalent in legal effect to one acquired by a formal grant or conveyance, and could only be divested in the manner in which any title may be divested, such as by a conveyance or by actual adverse possession.... ”
According to Milstead, after the title vested in plaintiffs’ predecessors, the title to the property could only be divested by a conveyance or by adverse possession.
The second issue in this case is whether Mr. Mitchell acquired the property by adverse possession. Once the plaintiffs proved title to the land by adverse possession, they received the benefit of the presumptions in favor of legal titleholders. Nothing short of actual, hostile, open, notorious and exclusive use by the defendant would vest title to the property in him. Although there was contradictory evidence concerning the use of the property subsequent to Mitchell’s acquisition of the property in 1958, the defendant did not prove that he had exclusive use of the property. Furthermore, Mr. Mitchell’s testimony was inconsistent with á claim of right. The following excerpt from the trial transcript concerns hedges which the plaintiff, Faye Roberts, planted on the disputed land several years prior to the trial. Mr. Mitchell testified:
“Q. Did you see anybody plant them?
“A. Yes, sir.
“Q. Who planted them?
“A. Faye, she set them out.
“Q. Did you mention anything to her about it?
“A. No, sir, I didn’t say nothing to her.
*516 “Q. You didn’t mention that she was on your property?
“A. No, sir.”
The above testimony shows that the defendant did not have exclusive use of the property, and his inaction concerning the hedges goes to prove that there was no hostile, open, and notorious possession by Mitchell.
The plaintiffs’ evidence supported their claim for adverse possession, and the defendant did not prove that he had adversely possessed the property subsequently so as to divest the plaintiffs’ title. Therefore, the judgment in favor of the defendant was clearly erroneous.
The judgment is due to be, and it hereby is, reversed, and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.