[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 232 
Frank T. Salter appeals from the trial court's April 25, 2003, judgment declaring void three warranty deeds from Mary Ellen Knowles to Salter. We reverse the trial court's judgment and render a judgment for Salter.
 I. Facts and Procedural History
The evidence in the record reveals the following facts. Frank T. Salter first met Mary Ellen Knowles in the early 1960s; the two became business associates and good friends. They engaged in many business ventures together in which Knowles acted as the bookkeeper. In October 1966, Knowles gave Salter power of attorney over all of her assets. On March 13, 1967, Knowles executed a will leaving everything she owned to Salter. At some point after she had executed the will, Knowles deeded all of the real property she owned in Choctaw County, Escambia County, Dale County, Conecuh County, and Covington County to Salter. The only deeds that are of issue in this case cover the real property located in Conecuh County and Covington County, totaling approximately 1,000 acres.
In an attempt to effectuate the transfer of the three parcels of property located in Conecuh County and Covington County, Knowles executed three deeds in November 1967. After executing the deeds, Knowles presented them to her attorney and told him that it was her desire to transfer title of the described properties to Salter, and she wanted to know if the deeds "looked alright." According to her attorney, Knowles, not wanting any trouble with her family, also asked her attorney what would happen if the deeds were not recorded until after her death. Knowles's attorney told her that the deeds "looked fine." Her attorney testified that he explained to Knowles the consequences of not recording the deeds and further explained that "delivery" of the deeds to the grantee was an essential element for the conveyance of real property.
A couple of months after Knowles met with her attorney to discuss the deeds, she *Page 233 
was admitted to the hospital to undergo some tests. While at the hospital, she telephoned her attorney and asked him to come to the hospital to witness her delivery of the deeds to Salter and to make sure that the delivery of the deeds was a "good delivery." When Salter and Knowles's attorney arrived at the hospital, Knowles retrieved the deeds from her purse and handed them to Salter. Once Salter had the deeds in his hand, Knowles's attorney advised her that what had just transpired was "a sufficient delivery of the deeds." Knowles requested at this time that Salter not record the deeds until after her death. Salter retained physical possession of the deeds. After the delivery of the deeds, Salter managed the timber property on the lands conveyed to him by the deeds, possessed keys to all of the gates located on the properties, and hunted on the properties. The properties remained in Knowles's name for purposes of ad valorem tax assessments; however, the invoices for those taxes were mailed to one of two businesses operated jointly by Salter and Knowles — Salter Truck and Tractor and Salter and Knowles's Brooklyn farming operation — and many of the invoices were paid from one of the joint business bank accounts maintained by Salter and Knowles. There is also evidence indicating that, following the delivery of the deeds to Salter, Knowles sold timber off and leased mineral rights to the properties described in the deeds; she also sold parcels of land included in the properties described in the deeds. Nevertheless, several of the purchasers testified that Salter knew of and consented to those transactions and even stated that Knowles would not make a decision concerning a sale without Salter's consent.
In September 1985, Knowles executed another will; the will contained no reference to the real property located in Conecuh County and Covington County. During the consultation with her attorney in preparation for drafting this will, Knowles told her attorney that she had already deeded most of her property to Salter and that she was aware that she did not have title to any of the real property she had previously conveyed to Salter.
All three deeds remained in the exclusive possession and control of Salter until Salter recorded them several days after Knowles's death on May 28, 2000.
In October 2000, the representatives of Knowles's estate, Harold Hamiter and Gillis Ralls ("the Hamiter appellees"), filed the present action seeking to have the three deeds declared void because, they argued, (1) the deeds were not properly delivered, (2) the deeds violated the statute of wills, and (3) Salter was barred by the doctrine of laches because he had failed to assert his claim to ownership within 20 years of the date of the execution of the three deeds. The complaint was subsequently amended to assert additional claims based upon the rule of repose and the Statute of Frauds. After conducting a bench trial, the trial court on April 25, 2003, declared all three deeds void. The trial court specifically found (1) that the three deeds "were intended to be the equivalent of a will" and that, "as a will, none of the three deeds [met] the requirements of the statute of wills"; (2) that "there was no intent by Knowles to vest title, ownership and control of her lands in Salter at the time of the purported delivery of the deeds at issue"; and (3) that "Salter's lack of action until after the death of Knowles [indicated] lack of present acceptance of the delivery." Salter appeals.
 II. Standard of Review A. Ore Tenus Rule
"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony *Page 234 
will be presumed correct and will not be disturbed on appeal except for a plain and palpable error." Allstate Ins. Co. v.Skelton, 675 So.2d 377, 379 (Ala. 1996). Nevertheless, this principle is not applicable where the evidence is undisputed, or where the material facts are established by the undisputed evidence. See Scott v. McGriff, 222 Ala. 344, 346, 132 So. 177,179 (1930) ("The rule that the finding and conclusion of the trial court on testimony given ore tenus will be accorded the weight of the verdict of a jury, and will not be disturbed unless contrary to the great weight of the evidence, is without application, where the evidence is without dispute and but one conclusion can be drawn from it."); see also Franklin v. Stateex rel. Trammell, 275 Ala. 92, 93, 152 So.2d 158, 159 (1963);Henderson v. Henderson, 228 Ala. 438, 153 So. 646 (1934);Duggan v. Duggan, 227 Ala. 92, 148 So. 844 (1933); Marsh v.Elba Bank Trust Co., 205 Ala. 425, 88 So. 423 (1920); Bowlingv. State, 204 Ala. 405, 85 So. 500 (1920). When the trial court "improperly applies the law to the facts, the presumption of correctness otherwise applicable to the trial court's judgment has no effect." Ex parte Board of Zoning Adjustment of Mobile,636 So.2d 415, 418 (Ala. 1994).
 B. Doctrine of Laches
In Horton v. Kimbrell, 819 So.2d 601, 606 (Ala. 2001), this Court summarized as follows the standard of review for determining whether the doctrine of laches is applicable:
 "The applicability of the doctrine of laches is `dependent upon the particular facts and circumstances' of each case. Dear v. Peek, 261 Ala. 137, 141, 73 So.2d 358, 361 (1954). `Where the question of laches is presented, the facts and circumstances of each case govern the court in the exercise of the discretion thereby invoked for the determination of the inquiry.' Jones v. Ball, 294 Ala. 654, 656, 320 So.2d 665, 667 (1975) (internal quotations omitted). The applicability of the doctrine is `committed to the sound discretion of the trial court.' Wallace v. Hardee's of Oxford, Inc., 874 F.Supp. 374, 377 (M.D.Ala. 1995). Thus, whether a trial court erred in applying the doctrine of laches is reviewed under an abuse-of-discretion standard. Bishop v. Pierce, 726 So.2d 663, 666 (Ala.Civ.App. 1998)."
 III. Analysis A. Deeds or Will
Salter first argues that the trial court erred by finding that Knowles intended the three deeds to be a will. Salter points out that Knowles knew the difference between a deed and a will as evidenced by the many deeds she had executed before she executed the deeds at issue here and by the three wills she had executed. Because Knowles knew the difference between the two types of documents, Salter argues, Knowles intended the documents here to be deeds as evidenced by the fact that she consulted with her attorney on how to transfer a valid present interest in the properties to Salter and by the fact that, after the deeds were delivered, she executed another will, in which she made no provision for the real property located in either Conecuh County or Covington County. Salter further argues that because deeds are irrevocable documents and wills cannot be irrevocable, it was Knowles's intent that the three documents be deeds.
The Hamiter appellees respond by arguing that Knowles did not intend the documents to be deeds, which would convey a present interest in the properties to Salter, as evidenced by the fact that Knowles remained in possession and control of the *Page 235 
properties located in Conecuh County and Covington County for 33 years following the alleged delivery of the documents. The Hamiter appellees point out that, between the time of the alleged delivery of the documents and her death, Knowles built a new house on one of the properties and resided there, mortgaged a portion of the properties, sold timber from the properties, leased mineral rights to the properties, executed a hunting lease on the properties, and sold portions of the properties to third parties. The Hamiter appellees contend that Knowles's conduct indicated that she did not intend to convey a present, irrevocable interest in the properties to Salter, but instead intended the documents to be a will. The Hamiter appellees point out that the trial court, when addressing this issue in its judgment, used language identical to the language in Randolph v.Randolph, 245 Ala. 689, 18 So.2d 555 (1944), a case in which the court found a deed to be the equivalent of a will. The Hamiter appellees further argue that, because the purported will did not meet the requirements of the statute of wills, title to the properties located in Conecuh County and Covington County vested in Knowles's devisees immediately upon her death.
As this Court stated in Henderson v. Henderson, 210 Ala. 73,97 So. 353 (1923):
 "In determining whether an instrument be a deed or a will, the controlling question is:
 "`Did the [grantor] intend any estate or interest whatever to vest before his death, and by the execution of the paper? Or . . . did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will; and it is immaterial whether he calls it a will or a deed; the instrument will have operation according to its legal effect.'"
210 Ala. at 92, 97 So. at 372. The grantor's intent must, if possible, be gathered from the language in the instrument.Graves v. Wheeler, 180 Ala. 412, 61 So. 341 (1913).
The three documents themselves evidence that Knowles intended the documents to be deeds. Each of the three documents states that Knowles "do[es] grant, bargain, sell, and convey" the properties described therein to Salter in exchange for $10. The use of the present tense in this statement evidences Knowles's intention to convey title to the properties immediately rather than upon her death. The documents do not contain any words of revocation or condition. See Williams v. Higgins, 69 Ala. 517
(1881). The Hamiter appellees even concede in their brief to this Court that the documents are unconditional on their face. Appellee's brief at p. 20. Thus, there is no indication from the face of the documents that Knowles did not intend for Salter to enjoy the incidents of ownership of the properties as he did before her death. Because we can discern the grantor's intent from the documents, there is no need to consider parol evidence. See Sipple v. Ogden, 628 So.2d 569, 571 (Ala. 1993) ("In examining the four corners of the . . . conveyance, it is clear to the Court that the instrument is unambiguous and, therefore, the Court is not required to resort to arbitrary rules of construction nor to receive extrinsic evidence in order to ascertain the intention of the parties, especially that of the grantor."). Evidence as to Knowles's continued transactions with third parties with respect to the properties is not relevant to determinating that these documents are deeds and thus not subject to the statute of wills.
Furthermore, the Hamiter appellees' reliance on Randolph v.Randolph, supra, is misplaced. In Randolph, this Court held *Page 236 
that a request for the cancellation of a deed was due to be granted because the grantor had been induced by fraud to convey the property. 245 Ala. at 694, 18 So.2d at 560. Such fraud negated the grantor's intent to convey a present interest in the property. Unlike Randolph, no fraud claim is presented in the case before us.
The trial court erred to the extent it based its finding that the documents were invalid on noncompliance with the statute of wills.
 B. Delivery and Acceptance of the Deeds
Salter next argues that the trial court erred in its conclusion that the deeds were neither validly delivered to him nor accepted by him. Salter quotes the undisputed testimony of Knowles's attorney in which he detailed all of the events that transpired before the delivery of the deeds, during the delivery of the deeds at the hospital, and after the delivery of the deeds. Most notably, Knowles's attorney explained that Knowles physically delivered the deeds to Salter, that she desired to effectuate an absolute transfer of title to Salter, and that she placed no conditions upon the conveyance. Salter points out that the trial court acknowledged the delivery of the deeds when it stated in its order that "the deeds were given to Salter [by Knowles] at the Evergreen hospital where Mrs. Knowles was having tests" performed. Salter argues that the trial court, having made this finding, erred by applying caselaw dealing with the delivery of a deed by a grantor to a third party, instead of caselaw addressing the delivery of a deed from a grantor to a grantee.
Alabama statutory law requires that, to effectuate a transfer of title to real property, a deed must be in writing and signed by the grantor, and the execution of the deed by the grantor must be attested to by at least one witness. See § 35-4-20, Ala. Code 1975. The deed must then be delivered to the grantee. SeeWilliams v. Mobile Oil Exploration Producing Southeast, Inc.,457 So.2d 962 (Ala. 1984); see also Richard R. Powell Patrick J. Rohan, 6A Powell on Real Property ¶ 898[2][a] at 81A-74 (1991). Delivery "may be actual, by a transfer of the conveyance, signed and attested, or acknowledged, from the manual possession of the grantor, to the manual possession of the grantee, though not a word is spoken; or it may be by saying something and doing nothing." Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 612,53 So. 812, 813 (1910). Nevertheless, to meet the delivery requirement, it must be clear from the evidence that the grantor intended to divest himself or herself of title to the property and that the grantor relinquished control and dominion over the property. See McDuffie v. First Nat'l Bank of Tuskaloosa,450 So.2d 451 (Ala. 1984); Chaney v. Waddell, 624 So.2d 545 (Ala. 1993). The intention of the grantor is "of paramount importance" in determining whether a deed has been delivered and is to be ascertained from all the circumstances surrounding the delivery.Boohaker v. Brashier, 428 So.2d 627, 629 (Ala. 1983); Chandlerv. Chandler, 409 So.2d 780, 782 (Ala. 1981); Randolph v.Randolph, supra. Furthermore, when "a deed is found in the possession of a grantee, the presumption arises that it was duly delivered to him." Williams v. Higgins, 69 Ala. 517, 522
(1881). The burden is on the complainant to rebut this presumption. Houston v. Stanton, 11 Ala. 412 (1847).
The evidence without dispute indicates Knowles's intention to deliver the deeds to Salter during her hospitalization. Most convincing of her intention, as the trial court noted in its order, is the undisputed evidence that Knowles physically delivered the deeds to Salter and that minutes before *Page 237 
doing so, Knowles told her attorney, "I want to deliver these deeds to Mr. Salter." Knowles was adamant that this delivery be valid as evidenced by her insistence that her attorney orchestrate and witness the delivery and her consultations with her attorney concerning the steps that needed to be taken in order to vest title to the properties in Salter. Knowles, an astute businesswoman, knew the operative legal effect of delivering a deed as evidenced by her past conveyances of title in other properties to Salter and to third parties. It is apparent through the undisputed evidence of her actions and words on the occasion of her hospitalization that Knowles made a deliberate decision to transfer to Salter her title to the properties located in Conecuh County and Covington County.
In order for a deed purporting to convey title to real property to be effective for that purpose, it not only must be delivered or tendered to the grantee or the grantee's representative, but also must be accepted by or on behalf of the grantee. VestaviaHills Bd. of Educ. v. Utz, 530 So.2d 1378, 1383 (Ala. 1988). "When a deed is for the benefit of the grantee, imposing on him no burdens or duties, the presumption is of his acceptance."Fitzpatrick v. Brigman, 130 Ala. 450, 456, 30 So. 500, 502
(1900). In the present case, the deeds did not impose any burdens or duties upon Salter, and there is, therefore, a presumption of Salter's acceptance.
While the Hamiter appellees rely upon Salter's failure to record the deeds until after Knowles's death to overcome the presumption of his acceptance, Salter argues that he was not obligated to record the deeds, as the trial court suggested in its order when it stated that Salter's "lack of action" indicated his lack of acceptance. The fact that Salter did not record the deeds until after Knowles's death does not defeat the undisputed evidence of his acceptance of the deeds. It is a familiar rule of law in Alabama that "the validity of a deed, as between the grantor and grantee therein, is not dependent upon its timely recordation." Murphree v. Smith, 291 Ala. 20, 24,277 So.2d 327, 329 (1973). The recording statute, § 35-4-90, Ala. Code 1975, does not render void an unrecorded deed except for the benefit of those particular classes of persons named in the statute.[1] Williams v. Fundaburk, 237 Ala. 30,185 So. 383 (1938); Alexander v. Fountain, 195 Ala. 3, 70 So. 669
(1916). The recording statute does not include one's heirs within the class of persons the statute is designed to protect. As Salter testified, he was merely following Knowles's wishes by not recording the deeds until after her death; there is nothing to the contrary in the record to indicate that Knowles's request amounted to a condition of the conveyance.
The presumption that Salter accepted the deeds is corroborated by the fact that he took physical possession of the deeds upon delivery and by the fact that he executed a codicil to his will after the deeds were delivered to him, in which he declared that in the event he predeceased Knowles he devised to her "all real property which ha[d] heretofore been conveyed to [him] by the said Mary Ellen Knowles." *Page 238 
The Hamiter appellees contend that Knowles's continued possession and control of the properties for 33 years after the alleged delivery of the deeds was hostile to Salter's claim. The facts that Knowles remained in possession of the properties, that she possibly paid taxes on the property occasionally, and that she sold several parcels that were included within the properties described in the deeds after she had delivered the deeds to Salter does not affect the validity of the original delivery of the deeds and the contemporaneous transfer of title to Salter. Knowles's subsequent conduct is relevant only as to the issue whether the rule of repose barred Salter's claim to the properties.
The trial court erred in its finding that the deeds were neither validly delivered by Knowles nor accepted by Salter. The factual determinations on which the trial court based that finding were inconsistent with the undisputed testimony concerning the delivery and acceptance of the deeds and are therefore not binding on this Court. Scott v. McGriff, supra;Franklin v. State ex rel. Trammell, supra.
 C. The Rule of Repose and the Doctrine of Laches 1. Availability of the Defenses
Salter contends that the trial court erred in its finding that the doctrine of laches and the rule of repose render the deeds void. While these are ordinarily defensive grounds for a determination of invalidity, the Hamiter appellees, the plaintiffs below, seek a declaratory judgment and are thus entitled to assert such defenses as part of their complaint seeking a declaration of rights. See, e.g., Cochrane Roofing Metal Co. v. Callahan, 472 So.2d 1005, 1007 (Ala. 1985) ("The subcontractor then filed this action for declaratory judgment, contending that it had no obligation to indemnify the contractor because the contractor had not given it notice of the suit in a timely manner, and contending that laches prevented the contractor from prevailing under the indemnity agreement.").
 2. Rule of Repose
This Court summarized the rule of repose, as distinct from adverse possession, in Ex parte Grubbs, 542 So.2d 927, 930
(Ala. 1989), as follows:
 "In Alabama, there is, in addition to the doctrine of laches, a rule of repose or prescription by which an action not instituted for more than 20 years is absolutely barred. Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820 (1935); Roach v. Cox, 160 Ala. 425, 49 So. 578 (1909); McArthur v. Carrie's Adm'r, 32 Ala. 75 (1858). This rule is similar to, but broader than, a statute of limitations, Wilkerson, supra; Patterson v. Weaver, 216 Ala. 686, 114 So. 301 (1927), and is not affected by it, Wilkerson, supra, nor dependent upon it, Boshell v. Keith, 418 So.2d 89 (Ala. 1982). Its application is not affected by the circumstances of the situation, by whether prejudice has resulted, by whether evidence has become obscured, or by the status of the parties. Wilkerson, supra. The only element of the rule is time. Boshell, supra. Only a recognition by the defendant of the plaintiff's subsisting and continuing right will stay the running of the prescriptive period. Eatman v. Goodson, 262 Ala. 242, 78 So.2d 625 (1954)."
Because we have found that the undisputed evidence reflects delivery by Knowles and acceptance by Salter and because the evidence also reflects Knowles's continued possession of the properties after her delivery of the deeds to Salter and his acceptance of the deeds, we must evaluate the Hamiter appellees' rule-of-repose *Page 239 
defense in light of the applicable law when a grantor remains in possession after delivery and acceptance.
The law governing retained possession by a grantor is well stated in Yancey v. Savannah West. R.R., 101 Ala. 234,13 So. 311 (1893), as follows:
 "`By the execution and delivery of a deed of land the entire legal interest in the premises becomes vested in the grantee, and if the grantor continues in possession afterwards, his possession is not that of owner, but of a tenant of the grantee. He will be regarded as holding the premises in subserviency to his grantee, and nothing short of an explicit disclaimer of such a relation, and a notorious assertion of right in himself, will be sufficient to change the character of his possession, and render it adverse to the grantee.' — Burhans v. Van Zandt, 7 Barb. (N.Y.) 91 [(1849)]; Butler v. Phelps, 17 Wend. (N.Y.) 642 [(1836)]."
101 Ala. at 238, 13 So. at 312 (emphasis added). Thus, even though Knowles continued to live on a portion of the land she had deeded to Salter, if she did so at his will, she could not defeat his title by adverse possession.
In this proceeding, the Hamiter appellees have disavowed any basis for recovery under the doctrine of adverse possession, relying instead on the rule of repose. Our cases have not consistently differentiated between the rule of repose and adverse possession in cases involving retained possession by the grantor, as this Court noted in Walker v. Coley, 264 Ala. 492,498, 88 So.2d 868, 873 (1956).
The grantor remained in possession for more than 20 years inChandler v. Pope, 205 Ala. 49, 87 So. 539 (1920). The grantor's widow testified that "she `reckon' her husband claimed the land; that he called it his and took care of it, but she never heardhim tell any of the others that he was claiming it, nor did sheever tell them anything to that effect." 205 Ala. at 50,87 So. at 540 (emphasis added). The Court held that the grantor's widow failed to establish possession hostile to the grantee where there was no evidence of a hostile statement directed to the grantee. Had the Court looked to the grantor's actions alone, rather than insisting on words constituting "a clear, unequivocal, and notorious disclaimer of the title of his landlord," the grantor would have prevailed. 205 Ala. at 50, 87 So. at 540. In Walkerv. Coley, the grantor and successors remaining in exclusive possession for more than 20 years prevailed, even though the evidence did not reflect hostile assertion of ownership directed to the grantee or the grantee's successors. The actions of the grantor and those holding under him were merely consistent with ownership. The Court explained its result, ostensibly different from the result reached in Chandler, as follows:
 "We observe in that connection that section 828 (Adverse Possession) Title 7, Code, does not apply to the prescriptive period of 20 years. Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409 [(1942)]; Jones v. Rutledge, [202 Ala. 213, 80 So. 35 (1918)]. We think the Court overlooked those principles in applying the presumption of subserviency to the prescriptive period in Chandler v. Pope, 205 Ala. 49, 87 So. 539 [(1920)]."
264 Ala. at 498, 88 So.2d at 873. Continuing, the Court inWalker stated:
 "The 20-year period would have little purpose if the same requirements of adverse possession applied to it as to the 10-year preiod [sic]. We think the Chandler case, supra, failed to observe the full force of our cases in that respect and should not be considered as expressive of the correct principle." *Page 240 
Id. The Court in Walker reasoned that because the grantees never asserted a claim to the land and the grantor remained in open, notorious, and exclusive possession of the land while not recognizing the grantees' title, the grantor's possession of the land was not presumed to be subordinate to the grantees' possession.
The Hamiter appellees rely on Walker and point to Knowles's remaining on the property as well as to her executing various timber deeds, mineral leases, and a mortgage as evidence of her open and notorious exclusive possession of the land for more than 20 years. The trial court rejected Salter's testimony as to his understanding with Knowles that she held title subservient to his as "not persuasive," in large part because Knowles was not available to testify, and held that his claim was barred by the doctrine of laches. In so doing, the trial court described Salter's testimony as "[t]he only testimony before this Court of the recognition of the claim of Salter." The Hamiter appellees and the trial court place importance on Knowles's conveyances of portions of the land to third parties after she had delivered the deeds to Salter; in doing so, however, they ignore unimpeached testimony of disinterested third parties that corroborates Salter's testimony as to the subserviency of Knowles's title.
The record reflects without dispute, through the testimony of disinterested third parties as well as Salter, that Salter took actual possession of the property upon delivery, that he used the property for many business ventures, and that he fully and openly enjoyed the incidents of ownership by farming the land; raising cattle, quail, and horses on the properties; managing the timber; leasing oil, gas, and mineral rights; periodically paying taxes on the properties; and enjoying unfettered access to the properties.
As for Knowles's conveyances after she delivered the deeds to Salter, several of the participants in those transactions testified that Salter knew about and consented to the transactions and even stated that Knowles would not make a decision concerning such a transaction without Salter's consent. Specifically, an individual who leased the mineral rights to a portion of the properties testified that "Knowles had wanted to review the lease with Salter before she signed it." An individual who purchased timber from the properties stated that both Salter and Knowles were present when he negotiated the purchase of the timber and that Knowles "wouldn't make a decision without she had [sic] Frank in person." Knowles's attorney testified that he mostly discussed the timber sales with Salter and that he discussed some of the timber deeds with him. Every time Knowles discussed with her attorney the conveyances to third parties, Knowles recognized the fact that she previously conveyed those lands to Salter and that she did not own the land. The trial court's findings in disregard of this undisputed evidence are clearly erroneous. See Roberts v. Mitchell, 437 So.2d 512 (Ala. 1983).
The present case is distinguishable from Walker in two significant respects. This Court noted in Walker that the grantor and his successors had "the open, notorious, exclusive possession for a period of 20 years or more after he made a deed to [the grantee] in 1919, and without recognition of the titleof his grantee or successors." 264 Ala. at 498, 88 So.2d at 873
(emphasis added). Here, there is undisputed evidence that Knowles recognized Salter's title during the running of the prescriptive period. The trial court recognized the applicability of this principle in its order, citing Boshell v. Keith, 418 So.2d 89,92 (Ala. 1982) ("The only circumstance that will *Page 241 
stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim."). Further, in Walker, this Court referred to the inactivity of the grantees, stating that "neither [the grantee nor his successors] have asserted claim or right to either tract of land, nor paid substantial value for it, nor paid taxes on it, nor sought possession of it or benefits from it, nor have done any act showing an assertion of claim so far as known to . . . the grantor, or the public, for a period of 20 years or more." 264 Ala. at 498, 88 So.2d at 873. Here, Salter's conduct as presented by undisputed evidence cannot be classified as wholly passive as was the case with the grantees in Walker.
The trial court erred in its finding that the rule of repose vested title in the Hamiter appellees. The factual determinations on which the trial court based its finding were inconsistent with the undisputed testimony concerning Knowles's and Salter's actions and are therefore not binding on this Court. Scott v.McGriff, supra; Franklin v. State ex rel. Trammell, supra.
 3. Doctrine of Laches
The trial court based its finding on the belief that Salter's 33-year delay in filing the deeds and Knowles's death unfairly prejudiced the Hamiter appellees in ascertaining Knowles's true intent. The trial court stated, "Certainly prejudice can occur by the death of the one person able to state the true intention of the grantor." (Emphasis added.) The trial court failed to acknowledge the undisputed evidence from disinterested third parties describing Knowles's actions and statements. The evidence of Knowles's intent was not confined to unavailable testimony from Knowles; she was not "the one person" who could testify as to the true intention of the grantor.
The undisputed evidence from Knowles's attorney established that she did not want the deeds recorded during her lifetime. InWoods v. Sanders, 247 Ala. 492, 25 So.2d 141 (1946), this Court stated:
 "We stated in Cook v. Castleberry, 233 Ala. 650, 173 So. 1 [(1937)], that if the claim was not stale at the death of the person primarily accountable and no facts have since occurred which added to the situation then existing make it so, relief would not be denied on the principle of laches."
247 Ala. at 496, 25 So.2d at 144. Salter, by adhering to Knowles's wishes and not recording the deeds until after her death, cannot be faulted for allowing his claim to become stale. For the doctrine of laches to bar a claim it must be said that "from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice."Ussery v. Darrow, 238 Ala. 67, 71, 188 So. 885, 888 (1939). This is plainly not such a case. The trial court exceeded its discretion in determining that the doctrine of laches defeated Salter's title.
 IV. Conclusion
Knowles properly conveyed the properties located in Conecuh County and Covington County to Salter by three separate deeds. We hold that the trial court's findings of fact were clearly erroneous and that the trial court improperly applied the law to undisputed facts. We, therefore, reverse the trial court's judgment declaring void the three warranty deeds conveying such properties, and we render a declaratory judgment recognizing Salter's title. *Page 242 
REVERSED AND JUDGMENT RENDERED.
HOUSTON, SEE, JOHNSTONE, and WOODALL, JJ., concur.
[1] Section 35-4-90, Ala. Code 1975, states:
 "(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors."