MAIN, Justice.
L.D. Owen III, as guardian ad litem for Wanda L. Schlumpf and Wesley A. Schlumpf (“Owen”), minor children, appeals from an order of the Baldwin Probate Court allowing the sale of real property held by the estate of James W. Schlumpf (“the decedent”). We reverse and remand.
I. Facts and Procedural History
The decedent’s wife, Wendy Schlumpf, died on August 9, 2014. The decedent died intestate on September 26, 2014. Wendy and James’s two children, Wanda L. Schlumpf and Wesley A. Schlumpf, both of whom are under the age of majority, are the decedent’s only surviving heirs. John W. Schlumpf, the decedent’s brother, has legal custody of the Schlumpf children, who now reside with their uncle in Hawaii. The probate court granted letters of administration for the decedent’s estate to Romaine S. Scott on October 8, 2014, and appointed Owen as the guardian ad litem for the Schlumpf children on July 24, 2015.
At the time of the decedent’s death, he owned real property in Baldwin County that he used as his personal residence (“the property”). During the administration of the estate, Scott commissioned an appraisal of the property; it was valued at $675,000 as of October 27, 2014. Scott listed the property for sale at $688,000. On July 14, 2015, Scott filed a petition in the probate court for the approval of the sale of the property for $450,000. The petition stated, in pertinent part:
“3. The sole real property asset of the estate is a residence situated ... in *58 Fairhope, Alabama. The residence has been listed for sale with Roberts Brothers, Inc., since November 4,2014.
“4. Based on the Baldwin County Revenue Commissioner’s 2015 property appraisal, the property is valued at $569,400.00_ Further, Appraiser Joseph Courtney appraised the property on October 27, 2014, as having a quick sale value of $475,000.
“5. An offer has been made to purchase the residence for $450,000.00. To date, this has been the sole offer made to purchase the residence and is a fair and appropriate sales price.
“6. The residence is encumbered by a mortgage the approximate balance of which is $293,568.44, and which will be satisfied at the closing of the sale of the residence.
“7. A sale of the residence is necessary in order to settle the estate’s debts and pay estate administration costs.”
Owen and the decedent’s brother, John W. Schlumpf, objected to the petition for sale.
Concurrently with the petition for sale, Scott filed a petition to resign as administrator. That petition included an updated inventory of the decedent’s estate. The inventory valued the property at $675,000 and indicated that the estate had a balance of cash on hand of $52,587.15. Owen maintains that the mortgagee did not file a claim against the estate for the balance owed on the mortgage and that the time for filing claims against the estate pursuant to § 43-2-350, Ala.Code 1975, has expired.
The probate court held a hearing on Scott’s petition for sale on July 31, 2015. At the hearing, Scott represented that he did not anticipate that the remaining estate-administration costs would exceed the estate’s cash on hand. When asked why a sale of the property was necessary if there were no costs of administration or claims filed against the estate, Scott stated that the mortgage was a debt of the estate that had to be satisfied before the estate could be closed. Because the amount of the mortgage exceeded the value of the cash and personal property in the estate, Scott argued that the property had to be sold to satisfy the debt. According to Scott, the fact that the mortgagee did not file a timely claim against the estate was irrelevant.
The record does not contain a transcript of the July 31, 2015, hearing. However, Owen included in the record a statement of the evidence and proceedings pursuant to Rule 10(d), Ala. R.App. P., which was approved by the probate court. That document states, in pertinent part, as follows:
“5. [Scott’s attorney] submitted the following two exhibits to the Probate Court: (i) a Residential Purchase Agreement dated July 6, 2015 (the ‘Contract’), and (ii) an Appraisal dated October 21, 2014 (the ‘Appraisal’).
“6. [Scott’s attorney] stated the Appraisal was conducted by Joseph M. Courtney and found the fair market value of the [property] to be $675,000, or $475,000 if priced for a ‘quick sale’. [Scott’s attorney] further stated the Contract represented an offer to purchase the [property] for $450,000.
“7. [Scott’s attorney] then called Dot Yeager, a real estate agent at Roberts Brothers, Inc., as a witness. Mrs. Yeager was then serving as the listing agent for the [property] and was responsible for marketing and selling the [property],
“8. Mrs. Yeager testified the [property] was currently vacant, the grounds were not being well maintained, and the house was in need of various repairs and maintenance, the most significant of which involved damage to some of the flooring from a water leak and one of *59 the HVAC units not functioning. Mrs. Yeager further testified in her opinion $450,000 was a fair value for the [property].
“9. On cross-examination by [Owen’s attorney], Mrs. Yeager testified that she was not a certified appraiser, and she arrived at her conclusion of value because a property is only worth what a buyer is willing to pay, and $450,000 was the only offer that had been received since the [property] was listed for sale approximately nine months earlier. Mrs. Yeager also testified she knew the appraiser, Joseph M. Courtney, personally, and in her opinion he was well qualified and generally well known in the local market for his expertise.
“10. Mrs. Yeager was dismissed.
“11. [Owen’s attorney] then filed a written objection to the Petition in open court (the ‘Objection’), and served a copy on all parties and counsel present at the Hearing. [Owen’s attorney] requested the court deny the Petition for lack of statutory authority in light of Mr. Scott’s failure to demonstrate a sale of the [property] was necessary in order to settle the Estate’s debts and pay Estate administration costs as required by Ala. Code [1975,] § 43-2-442.
“12. [Owen’s attorney] pointed out that more than six months has elapsed since Letters of Administration were issued, and according to the updated inventory and accounting filed by Mr. Scott concurrently with the Petition, after all claims against the Estate had been satisfied there was still a balance of cash on hand in the amount of $52,587.15.
“13. In response to inquiry by [Owen’s attorney], Mr. Scott stated he did not anticipate the remaining Estate administration costs to exceed the Estate’s current cash balance. However, Mr. Scott argued that the mortgage currently encumbering the [property] was a debt of the Estate that must be satisfied before the Estate could be closed. According to Mr. Scott, the mortgage balance was $293,568.44, and because that balance exceeded the value of the Estate’s cash and personal property a sale of the [property] was therefore authorized under Ala.Code [1975,] § 43-2-442.
“14. [Owen’s attorney] agreed the mortgage was an encumbrance on the [property], but explained that in order for the mortgage to constitute a valid claim against the Estate the mortgagee is required to file a verified claim within six months of Letters of Administration being issued. In this case, no claim had been filed by the mortgagee and any claim would now be time barred. As a result, upon the death' of Decedent, the [property] devolved immediately to the Children by operation of law, subject, however, to the mortgage. The [property] would then be subject to foreclosure by the mortgagee unless the debt was refinanced or repaid by the Children. In this case, the Children had more than sufficient funds with which to carry or satisfy the mortgage because collectively they had a balance of over $1,000,000- in a blocked account set up by the Probate Court to receive the proceeds of life insurance and other financial accounts not otherwise subject to probate.
“15. The court .then asked [Owen] whether he agreed with [Owen’s attorney^ statement of the law and application of facts, and whether or not he objected to the Petition.
“16, In response, [Owen] stated that he agreed with [Owen’s attorney] and orally objected to the Petition.
“17. The court took the matter under submission and the Hearing was concluded.”
(Capitalization in original.)
On August 3, 2015, the probate court entered an order granting Scott the au *60 thority to sell the property for the offered purchase price of $450,000. After the probate court entered the order for sale, it granted Scott’s petition to resign as the administrator of the estate. The probate court appointed Harry M. D’Olive, Jr., as successor personal representative of the decedent’s estate (“D’Olive”). Owen then appealed.
II. Standard of Review
A trial court’s ruling on a question of law carries no presumption of correctness on appeal, and this Court’s review is de novo. Salter v. Hamiter, 887 So.2d 230, 234 (Ala.2004).
III. Analysis
The sole question presented by this appeal is whether real property inherited by the heirs of an intestate decedent can be ordered to be sold to satisfy a mortgage when the mortgagee did not file a claim against the estate for the balance owed on the mortgage. In the absence of a decedent’s disposition of real property in a last will and testament, an intestate decedent’s real property passes to his or her heirs by operation of law. Section 43-2-830(a), Ala. Code 1975, provides, in pertinent part:
“Upon the death of a person, decedent’s real property devolves to the persons to whom it is devised by decedent’s last will ..., or in the absence of testamentary disposition, to decedent’s heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates.”
Owen acknowledges, however, that under certain circumstances a decedent’s real property may be sold by the administrator of the estate “for the payment of debts.” § 43-2-442, Ala.Code 1975. This Court has held that “the existence of the power [of sale] depends upon the existence of the necessity for its exercise — the payment of debts of the testator or intestate.” Gilmore v. Roberson, 273 Ala. 230, 233, 139 So.2d 604, 607 (1962). The Court of Civil Appeals addressed and analyzed the interrelationship between these two statues in Self v. Roper, 689 So.2d 139, 141-42 (Ala.Civ.App.1996):
“Section 43-2-848(a), [Ala.] Code 1975, provides that the personal representative is entitled to a percentage ‘of the value of all property received and under the possession and control of the personal representative.... ’ (Emphasis added.) Pursuant to § 43-2-830(b), [Ala.] Code 1975, the personal property of the intestate decedent devolves to the personal representative. Unlike personal property, the intestate decedent’s real property devolves to the decedent’s heirs. That is, the personal representative is generally not in possession or control of the real property. § 43-2-830(a), [Ala.] Code 1975.
“There are two exceptions to the above-stated general rule regarding the devolution of the intestate decedent’s real property: The first exception is that the devolution of a decedent’s real property is subject to the rights of creditors and to administration. § 43-2-830, [Ala.] Code 1975. In other words, title to the real property vests upon death in the heirs as joint owners, but subject to divestment, if needed, for payment of debts of the estate or costs and expenses of administration. Real property is left with the heirs, the persons presumptively entitled thereto, unless the personal representative shall determine that his possession of the real property is necessary for purposes of administration. § 43-2-837, [Ala.] Code 1975.
“The parties stipulated ... that there was on deposit in the estate administration proceeding approximately $300,000, with no known debts of the estate with *61 the exception of potential tax liability. The maximum estate tax liability was estimated to be $60,000 and was substantially less than the $300,000 available for the payment of debts. Therefore, [the personal representative of the estate] could not have concluded that possession and control of the real property was necessary for purposes of administration.
“Sections 43-2-442 through -444, [Ala.] Code 1975, provide for the second exception. Those sections allow a personal representative to bring a sale of lands for division ‘for the payment of debts.’ The sections require the written consent of an adult heir to sell and an application for sale, verified by affidavit, to the probate court having jurisdiction of the estate.
"... The real property did not have to be sold to pay the debts of the estate. The complaint was not verified by affidavit, and there was no written consent of an adult heir filed.
“The two exceptions to the general rule are inapplicable to the facts before us. [The personal representative] was not in possession or control of the real property....”
In this case, Scott acknowledged that the. cash on hand in the estate was sufficient to cover the anticipated costs of the administration of the estate and that the sale of the property was necessary only to satisfy the mortgage. Accordingly, Owen argues, a sale of the property would not be necessary unless the mortgage was determined to be a valid debt of the estate that must be satisfied. Owen contends that the mortgagee of a decedent has the option to file a timely and verified claim against the estate. If the mortgagee does so, Owen says, its debt can be paid out of the general assets of the estate. If the mortgagee chooses not to file a claim against the estate, Owen argues, then the mortgagee must rely solely on its right of foreclosure for satisfaction of the mortgage. Owen relies on Traweek v. Hagler, 199 Ala. 664, 667, 75 So. 152, 153 (1917), in which this Court held:
“So far as the preservation and enforcement of a specific lien upon an intestate’s property is concerned, it is certainly not necessary to file with the personal representative a claim for the debt which supports the lien. But in order to preserve the debt as a charge upon the intestate’s general estate, such a filing is necessary.”
He also relies on Rives v. Cabel, 213 Ala. 206, 208, 104 So. 420, 421 (1925), in which this Court held that a mortgagee had the right to file a verified and timely claim and to have its debt paid out of the estate, but that its failure to properly present such a claim did not affect the specific lien in or title to the mortgaged real estate, and on Chamblee v. Proctor, 203 Ala. 61, 82 So. 21 (1919), in which this Court held that a mortgagee must file a verified and timely claim against the estate to preserve its debt as a charge against an intestate’s general estate.
In this case, Owen argues, because the mortgagee did not file a claim against the estate, the mortgage is not a debt of the estate and need not be satisfied before the final settlement of the estate. Therefore, Owen argues, as the Court of Civil Appeals recognized in Self, the existence of the mortgage cannot justify the sale of the property under the first exception contained in § 43-2-830(a), Ala.Code 1975. Furthermore, Owen argues, because none of the heirs of the estate are adults, the second exception recognized in Self is also unavailable to justify the sale of the property, and Scott has not argued that the second exception applies' here.
*62 The Court of Civil Appeals’ reasoning in Self is sound, and we find it persuasive. Therefore, pursuant to Self and the other authorities discussed above, we conclude that the probate court erred in ordering the sale of the property. Upon the decedent’s death, the Schlumpf children inherited the property subject to the mortgage. Because the mortgagee did not 'file a claim against the estate, the mortgage is not a debt that can justify forcing the sale of the property to satisfy that mortgage. In the event the mortgage is not satisfied by the Schlumpf children, then the mortgagee has the remedy of foreclosure available if such an action becomes necessary to satisfy the debt.
IV. Conclusion
We reverse the order of the probate court authorizing Scott, who was then the administrator of the decedent’s estate, to sell the property, and we remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, BOLIN, PARKER, MURDOCK, SHAW, WISE, and BRYAN, JJ., concur.