Rel: March 20, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0393
_____

### Ryan Hess

### v.

### Will Pecue

**Appeal from Baldwin Circuit Court**
**(CV-22-900467)**

STEWART, Chief Justice.

Ryan Hess appeals a judgment entered against him by the Baldwin

Circuit Court ("the trial court") in favor of Will Pecue. Because the

evidence does not support Pecue's sole claim of fraud, we reverse the judgment.

## Background

In August 2021, Pecue entered into two contracts with "Gulf Coast Dock Masters/H5K Company, LLC" ("H5K") to replace two piers near Pecue's house on Ono Island. The contracts stated that they were between "William Pecue ... and Gulf Coast Dock Masters/H5K Company, LLC and its representative, Ryan Hess." One contract related to the replacement of a pier across the street from Pecue's house that the parties referred to as the "harbor pier." The other contract related to the replacement of a pier located behind Pecue's house that the parties referred to as the "social pier." The contracts stated that "treated lumber" was to be used to construct the piers. It is undisputed that the harbor pier was completed and that Pecue paid the full contract price. However, Pecue terminated the social-pier contract before the social pier was finished and without paying the full contract price.

In May 2022, Pecue filed a complaint in the trial court asserting a single count of fraud against H5K and Hess and seeking $1,000,000 in compensatory and punitive damages. The trial court held a bench trial

on January 27, 2025. The evidence at trial indicated that the dealings between Pecue and Hess occurred between August and November 2021. In September, when the social pier was nearly complete and all that remained to be done was to finish a pavilion structure, Pecue noticed that nontreated lumber had been used in certain areas on the pier. Pecue notified Hess and reminded him that the social-pier contract required the use of treated lumber. Hess insisted that he had ordered only treated lumber, but when Hess went on-site to view the lumber, he acknowledged that certain boards on the social pier were nontreated lumber, which he attributed to a mistake by his crew. Hess had his crew replace between 20 and 30 boards on the social pier.

The parties dispute what occurred next. Pecue contends that Hess refused to replace additional areas of nontreated lumber because, he testified, Hess told him H5K would lose money. Pecue testified that he "saw that as a refusal, an outright refusal to follow the contract, the remedy provisions and ultimately the warranty." As a result, Pecue testified that, on October 11, 2021, he sent Hess via text message a notice of default in compliance with a provision in the social-pier contract. Pecue testified that he gave Hess two weeks to remedy the issues but that Hess

never came to cure the default and that there was "radio silence." According to Hess, around the time Pecue informed him of the discovery of the nontreated lumber, he had advised Pecue that the roof Pecue had requested for the pavilion on the social pier did not match the roof on Pecue's house, which was required by the applicable homeowner's association. Pecue agreed to a change order, and Hess ordered different roofing materials, but there was a delay in receiving those materials. Hess testified that he intended to replace the remaining nontreated lumber and complete the pavilion on the pier when the roofing materials were delivered. Hess opined that Pecue was frustrated at the delay in receiving the roofing materials.

Much of Pecue's testimony related to his belief that Hess had failed to adhere to the terms of the social-pier contract and his displeasure with Hess's work on the social pier.[1] Pecue testified that he had paid approximately $50,000 to a subsequent contractor to repair the issues he alleged Hess had failed to fix and to finish the social pier. When Pecue

---

[1]Hess's counsel objected to testimony concerning workmanship issues on the basis that such testimony was not related to the fraud claim. The trial court overruled the objection.

was specifically asked about the basis for his fraud claim, the following exchange occurred:

> "[Hess's attorney:] The fraud that you're alleging is that Mr. Hess made representations to you to get you to enter into a contract with him that weren't true; is that correct?
>
> "[Pecue:] My position of fraud is that I signed a contract with definitive statements, terms and conditions, with a company that didn't exist and the warranties that I base that contract execution on will never be provided.
>
> "[Hess's attorney:] Why will they never be provided?
>
> "[Pecue:] Because he's refusing to do the work, and ultimately I found out that company never existed."

Indeed, Pecue and his attorney repeatedly emphasized during the trial that Pecue had entered into a contract with a company that "did not exist," by which they apparently meant that H5K was not a separately formed or incorporated business entity, and they suggested that H5K's "nonexistence" effectively precluded any contractual remedies for poor workmanship. Pecue's attorney explained to the trial court that it was the inducement to enter into a contract with a "nonexistent" company that formed the basis of Pecue's fraud claim.

Hess denied that H5K did not exist. Hess testified that he had worked in marine construction for over 20 years and that he had come to

Baldwin County from Louisiana to work on marine-construction repairs after Hurricane Sally. Hess testified that H5K was a Louisiana limited-liability company that he had formed around 2014. Hess admitted that, at the time he entered into the contracts, H5K was not registered to do business in Alabama. Nevertheless, Hess claimed that he had been qualified as a subcontractor to do marine-construction work in Alabama and that he had had a business license with the City of Orange Beach and the City of Gulf Shores. Hess testified that he registered H5K in Alabama in approximately 2022, once he had permanently relocated to Baldwin County.

On January 31, 2025, the trial court entered a judgment in favor of Pecue and against Hess in the amount of $100,000.[2] Hess filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., in which he argued, among other things, that the evidence did not support Pecue's fraud claim. The trial court denied Hess's postjudgment motion. Hess

---

[2]The judgment as entered by the trial court was against Hess and "Ryan Hess D/B/A Gulf Coast Dock Masters," the only two defendants listed on the case-action-summary sheet. Although "Gulf Coast Dock Masters/H5K Company, LLC" is named as a defendant in Pecue's complaint, for reasons that are not clear from the record, it is not listed as a separate party in the trial court. Hess is listed as the only appellant on the notice of appeal.

timely appealed the judgment, arguing that the evidence of fraud was insufficient to support the judgment.

## Standard of Review

Because the judgment was entered after a bench trial, this Court applies the ore tenus standard of review, under which "findings on disputed facts are presumed correct, and the trial court's judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Lawson v. Harris Culinary Enters., LLC, 83 So. 3d 483, 491 (Ala. 2011)(citing Southside Cmty. Dev. Corp. v. White, 10 So. 3d 990, 991 (Ala. 2008)). "The presumption of correctness [afforded under the ore tenus standard of review] ... is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment." Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985). When the evidence is undisputed, or when the material facts are established by undisputed evidence, the ore tenus standard is inapplicable and this Court applies the de novo standard of review. Lawson, 83 So. 3d at 491 (citing Salter v. Hamiter, 887 So. 2d 230, 234 (Ala. 2004), and Burkes Mech., Inc. v. Ft. James-Pennington, Inc., 908 So. 2d 905, 910 (Ala. 2004)). Likewise, this Court applies the de novo

7

standard of review to the trial court's conclusions of law and its application of law to the facts. Espinoza v. Rudolph, 46 So. 3d 403, 412 (Ala. 2010).

Discussion

Here, although there was testimony at trial indicating that the work performed was not in conformity with the social-pier contract, Pecue chose to exclusively pursue a fraud claim.[3] We note that Pecue has consistently framed his fraud claim as follows: that Hess induced Pecue to enter into a contact with a "nonexistent corporation." As we understand his theory,[4] Pecue contends that, because H5K was not formed as a separate legal entity (i.e., a limited-liability company), the company did not exist, and, thus, there was not a second party to the

---

[3]Pecue's counsel informed the trial court at trial that "the only vehicle we're traveling under is fraud. There's no negligence claim. There's no breach of warranty claim. There's no breach of contract claim. There is only one claim and that's fraud." Likewise, Pecue has informed this Court that "[t]his case … [is] solely about fraud" that "induce[d] … Pecue to enter into contracts with a nonexistent corporation." Pecue's brief at 5.

[4]Pecue has done little to aid this Court's understanding of his fraud theory. His brief to this Court contains no citation to any case or statute, much less any discussion of relevant legal principles supporting his claim or the trial court's judgment.

contract against which Pecue could pursue any contractual remedies for Hess's alleged poor workmanship. As Pecue explains in his brief to this Court, Hess was, therefore, "hidden from [the] negative consequence [of his substandard work] by the nonexistent corporation." Pecue's brief at 9.

"'"'"The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation."'"'" Brickhouse Cap., LLC v. Coastal Cryo AL, LLC, 393 So. 3d 467, 473 (Ala. 2023)(quoting Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res., 986 So. 2d 1093, 1114 (Ala. 2007), quoting in turn Saia Food Distribs. & Club, Inc. v. SecurityLink from Ameritech, Inc., 902 So. 2d 46, 57 (Ala. 2004), quoting in turn Waddell & Reed, Inc. v. United Invs. Life Ins. Co., 875 So. 2d 1143, 1160 (Ala. 2003), quoting in turn Padgett v. Hughes, 535 So. 2d 140, 142 (Ala. 1988))(emphasis omitted).

First, there is scant evidence that Hess misrepresented whether H5K was an "existing" company. The social-pier contract identified H5K as an "LLC," i.e. a limited-liability company. Pecue argues that this was

9

a misrepresentation because, he claims, H5K did not actually exist as a separate business entity. Other than Pecue's statement that he had "learned" that H2K did not exist, however, there is no evidence in the record indicating that H5K did not exist or that it was not a limited-liability company. To the contrary, Hess testified that, at the time he performed the work for Pecue, H5K was a Louisiana limited-liability company that he had formed around 2014.[5]

Second, even if H5K was not a separate legal business entity, we fail to see how this fact is material under the circumstances. A "material fact" is "a fact of such a nature as to induce action on the part of the complaining party." Bank of Red Bay v. King, 482 So. 2d 274, 282 (Ala. 1985). Here, whether H5K was a limited-liability company or a sole proprietorship was a matter collateral to the parties' bargain, and there was no testimony indicating that it played any role in inducing Pecue to enter the social-pier contract.

---

[5]Hess admitted that H5K was not registered to do business in Alabama. Although there may be certain legal repercussions for an unregistered out-of-state business operating in Alabama, see § 10A-1-7.21(a), Ala. Code 1975, the failure to register does not impair the validity of its contracts or prevent it from defending itself in a lawsuit. § 10A-1-7.21(b), Ala. Code 1975. In other words, its failure to register in Alabama does not mean that it did not exist.

Third, Pecue did not establish that the alleged misrepresentation regarding whether H5K was a limited-liability company proximately caused him damage. The damages suffered by Pecue on account of Hess's alleged poor workmanship were unrelated to any representation regarding H5K's business structure. Nevertheless, Pecue contends that he was damaged by the alleged misrepresentation because, he says, he was unable to pursue contractual remedies against a nonexistent limited-liability company, and that Hess was, therefore, able to "hide behind" a nonexistent limited-liability company. This argument, however, is based on an incorrect understanding of the law. If H5K was not a separate business entity, then it was a sole proprietorship for which Hess was personally liable. See Ex parte Hughes, 51 So. 3d 1016, 1018 (Ala. 2010) (a sole proprietorship is "'[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity'" (quoting Black's Law Dictionary 1427 (8th ed. 2004))). If H5K is a limited-liability company, however, Hess would generally be protected from personal liability for H5K's defective work. See § 10A-5A-3.01, Ala. Code 1975. Thus, Pecue was arguably in a better position to enforce the social-pier contract against Hess personally if H5K was not a

11

limited-liability company. Likewise, the law generally provides that one who purports to contract on behalf of a nonexistent principal is personally liable on the contract. See Harris v. Stephens Wholesale Bldg. Supply Co., 54 Ala. App. 405, 409, 309 So. 2d 115, 119 (Civ. App. 1975) ("If a person professing to be an agent of another makes a contract, he thereby imposes personal liability upon himself when there is no principal to bind."), and 3 Am. Jur. 2d Agency § 241 (2024). Thus, if H5K was a nonexistent limited-liability company, Hess would have been exposed to, rather than shielded from, personal liability, and Pecue would not have been prevented from asserting contractual-based remedies against Hess. In short, the evidence at trial did not demonstrate that the alleged misrepresentation regarding H5K's status as a limited-liability company was a misrepresentation regarding a material fact on which Pecue relied to his detriment.

Finally, to the extent that Pecue's fraud claim can be framed as an assertion that Hess and/or H2K never intended to abide by the terms of the social-pier contract -- i.e., that Hess never intended to use treated lumber or to honor the warranty -- Pecue was required to prove the additional elements of promissory fraud. See Alabama River Grp., Inc. v.

12

<u>Conecuh Timber, Inc.</u>, 261 So. 3d 226, 245 (Ala. 2017) ("To succeed on a claim of promissory fraud, the … plaintiffs must prove two elements in addition to the elements of misrepresentation, namely: 'proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and … proof that the defendant had an intent to deceive.'" (quoting <u>Ex parte Moulton</u>, 116 So. 3d 1119, 1144 (Ala. 2013))). There is no such evidence in the record.

Conclusion

In this case, Pecue asserted a single fraud claim arising from his dissatisfaction with the work performed by Hess. As explained above, although there was evidence presented at trial that Hess's workmanship was deficient, that evidence was insufficient to support a judgment against Hess on Pecue's fraud claim. We, therefore, reverse the judgment and remand the cause with instructions for the trial court to enter a judgment in favor of Hess on Pecue's fraud claim.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Wise, Sellers, Cook, and Parker, JJ., concur.